PEOPLE v DERBECK

Docket No. 137436. Submitted June 2, 1993, at Detroit. Decided November 15, 1993, at 9:30 A.M. Leave to appeal sought.

Daniel Derbeck was convicted by a jury in the Monroe Circuit Court, Michael W. LaBeau, J., of assault with intent to commit criminal sexual conduct involving sexual penetration and second-degree criminal sexual conduct. He then pleaded guilty of being an habitual offender, fourth offense, and was sentenced to two concurrent terms of twenty-five to fifty years' imprisonment. He appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying the defendant's motion to suppress in-court identification of the defendant.

2. It was not improper for the police to conduct a photographic showup rather than a corporeal lineup in attempting to identify the assailant, and the defendant's counsel was not required to be present at the showup, because the defendant was not the focus of the investigation at that time. The photographic showup was not highly suggestive.

3. The sentences of twenty-five to fifty years for the habitual offender convictions do not violate the principle of proportionality. However, because the judgment of sentence does not reflect the defendant's separate habitual offender convictions and sentences, the case must be remanded to the trial court for entry of a corrected judgment of sentence.

4. There was significant factual support for the scoring of the offense variables of the sentencing guidelines. The court properly overruled the defendant's objections to the scoring of the guidelines.

Affirmed and remanded.

1. CRIMINAL LAW — CORPOREAL IDENTIFICATION — PHOTOGRAPHIC IDENTIFICATION.

It is generally more desirable to have a corporeal identification of

REFERENCES

Am Jur 2d, Criminal Law §§ 746, 802, 972, 974; Evidence § 371.8; Habitual Criminals and Subsequent Offenders § 2.

See ALR Index under Attorney or Assistance of Attorney; Description and Identification; Habitual Criminals and Subsequent Offenders.

a suspect than a photographic identification; however, it is not improper for the police to conduct a photographic showup where, at the time of the showup, the defendant is not in custody, the defendant is not readily available for a corporeal lineup, and probable cause does not exist to arrest the defendant.

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL — PHOTOGRAPHIC IDENTIFICATION.

There is no requirement that a defendant's counsel be present at a photographic showup where the defendant was identified by a complainant if the defendant was not the focus of the investigation at that time.

3. SENTENCES — HABITUAL OFFENDERS — PRINCIPLE OF PROPORTIONALITY.

Habitual offender sentences are subject to the principle of proportionality.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William D. Frey,* Prosecuting Attorney, and *Lawrence J. VanWasshenova,* Assistant Prosecuting Attorney, for the people.

*Mark H. Magidson,* for the defendant on appeal.

Before: FITZGERALD, P.J., and MICHAEL J. KELLY and W. J. CAPRATHE,* JJ.

MICHAEL J. KELLY, J. Following a jury trial, defendant was convicted of assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1); MSA 28.788(7)(1), and second-degree criminal sexual conduct, MCL 750.520c(1)(f); MSA 28.788(3)(1)(f). Subsequently, defendant pleaded guilty of being an habitual offender, fourth offense, MCL 769.12; MSA 28.1084. He was sentenced to concurrent terms of twenty-five to fifty years' imprisonment. Defendant appeals as of right.

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant's convictions stem from his assault of and forcible sexual contact with the sixteen-year-old complainant.

Defendant first argues that the trial court erred in denying his motion to suppress the in-court identification of defendant. Defendant challenges the propriety of the complainant's in-court identification on several grounds. None requires reversal.

I

First, defendant claims that the police initially should have conducted a corporeal lineup because it is a more trustworthy method of identification than a photographic showup. It is generally recognized that a corporeal identification is superior to a photographic identification. *Simmons v United States,* 390 US 377, 383; 88 S Ct 967; 19 L Ed 2d 1247 (1968). However, because at the time of the photographic showup in this matter defendant was not in custody, was not readily available for a corporeal lineup, and probable cause did not exist to arrest him, it was not improper for the police to conduct a photographic showup. *People v Anderson,* 389 Mich 155, 186-187; 205 NW2d 461 (1973); *People v DeMeyers,* 183 Mich App 286, 295; 454 NW2d 202 (1990); *People v McFadden,* 159 Mich App 796, 799; 407 NW2d 78 (1987); *People v Dumas,* 102 Mich App 196, 200-201; 301 NW2d 849 (1980).

Defendant also claims that because he was the focus of the investigation, defense counsel should have been present at the photographic showup. We disagree. The photographic showup was conducted during the precustody, prequestioning, and "mere suspicion" phase of these proceedings. Defendant was not the focus of the investigation and, therefore, defendant's counsel was not required to be

present at the showup. *People v Lee,* 391 Mich 618, 625; 218 NW2d 655 (1974); *McFadden, supra* at 799.

Lastly, there is absolutely no support in the record for defendant's claim that the photographic showup was "highly suggestive."

*ι*          II

Next, defendant claims that his sentences of twenty-five to fifty years for the habitual offender convictions violate the principle of proportionality. We disagree. However, we note that the judgment of sentence form No. CC 219b does not reflect defendant's habitual offender convictions and sentences. Therefore, we remand this matter to the trial court for entry of a corrected judgment of sentence.

A sentence must be proportionate to the seriousness of the crime and the defendant's criminal record. A sentencing court abuses its discretion when it violates the principle of proportionality. *People v Milbourn,* 435 Mich 630, 656-657; 461 NW2d 1 (1990). Although the sentencing guidelines do not apply to an habitual offender's sentence, the principle of proportionality is still applied to the review of the defendant's sentence. *Milbourn, supra* at 661, n 29. In a case such as this, the trial court must fill out a sentencing information report for the underlying offense. This is done to aid in the development of guidelines for habitual offender sentencing, rather than to guide the sentencing court in determining the habitual offender's sentence. *People v Strickland,* 181 Mich App 344, 346; 448 NW2d 848 (1989). However, the guidelines are a tool that may assist in determining whether the defendant's sentence as an habitual offender is proportionate. *People v Williams,*

191 Mich App 685, 686; 479 NW2d 36 (1991). The habitual offender statutes do not represent substantive crimes. Rather, they are a legislative determination that recidivist individuals who persist in criminal activities and show indifference to the law should be subject to longer possible sentences. *People v Hendrick*, 398 Mich 410, 416; 247 NW2d 840 (1976); *Williams, supra* at 686.

In this case, the guidelines' recommended range for the underlying offenses was five to ten years. Defendant received sentences of twenty-five to fifty years' imprisonment.

The trial court gave comprehensive attention to all aspects of the crime and the criminal, including: (1) the fact that this was a very serious offense; (2) defendant's "bad record," including six or seven prior felony convictions; (3) the fact that defendant had two prior criminal sexual conduct convictions; (4) the fact that only three months before this offense, defendant was released from prison, where he had served a sentence for attempted criminal sexual conduct; (5) the fact that he "stalked" the victim before this offense occurred; and (6) the fact that defendant is a threat to society in that he keeps committing these types of offenses. We share the trial court's concern that defendant is a clear threat to society. Apparently, there is little chance for rehabilitation. Under these circumstances, society must be protected from defendant's conduct.

The criteria for an habitual offender sentence is no different from that for any other sentence, except that the guidelines do not apply. The sentence must still be proportionate to the offense and the offender. The guidelines are a tool that may assist in determining whether the defendant's sentence as an habitual offender is proportionate. The guidelines are information, we are told, for habit-

ual offender sentences, but they are not yet aborning.

As an habitual offender, fourth offense, defendant was eligible for a sentence of from any term of years to a maximum of life imprisonment. MCL 769.12; MSA 28.1084. The guidelines' recommended range for the underlying offenses was five to ten years' imprisonment. Although the guidelines do not apply to habitual offender sentences, in determining the proportionality of an habitual offender sentence, it is helpful to evaluate the degree of enhancement allowed by the habitual offender statute in relation to the minimum sentence range recommended by the guidelines for the underlying offense. *People v Oelberg,* 197 Mich App 346, 347; 494 NW2d 869 (1992); *Williams, supra.* However, in cases such as this involving habitual offender convictions under MCL 769.12; MSA 28.1084, where the habitual offender statute does not provide for any specific degree of enhancement, but instead provides that defendant, a fourth-felony offender, may be sentenced to a maximum term of life imprisonment, there is no way to evaluate the degree of enhancement allowed under the statute. A maximum sentence of life imprisonment cannot be factored. At most, in a case such as this, the guidelines are a useful reference point for the fashioning of proportionate habitual offender sentences, but nothing more. See *People v Malkowski,* 198 Mich App 610, 615; 499 NW2d 450 (1993).

Here, the probation department recommended a prison term of thirty to sixty years, and the prosecutor's office urged a sentence of thirty-five to seventy years. Defendant's argument that the offense variables were improperly scored and his placement in the D-III grid was erroneous simply begs the question. No matter how the guidelines

for the underlying offenses were scored, defendant's exposure to sentences of any term of years up to life imprisonment for his habitual offender, fourth offense, convictions would not change. Until guidelines are promulgated for habitual offenders with three or more offenses, we suggest their sentence review defies analogizing to the underlying offense guidelines.

We can find no justification for defendant's argument that the sentences of twenty-five to fifty years were disproportionate to the seriousness of the crimes and defendant's criminal record.

### III

Defendant also challenges the scoring of several offense variables. Appellate review of sentencing guidelines calculations is very limited. *People v Milton,* 186 Mich App 574, 577; 465 NW2d 371 (1990). A sentencing court has discretion in determining the number of points to be scored, provided there is evidence on the record that adequately supports a particular score. *Id.* at 577-578. The Sentence Review Committee strongly recommends that this Court uphold scoring decisions for which there is any supporting evidence. *Id.* at 578. We find that there was significant factual support for the challenged scores. The trial court properly overruled the defendant's objections to the scoring of the guidelines.

Affirmed and remanded.