PEOPLE v BORDEAU

Docket No. 163419. Submitted May 16, 1994, at Grand Rapids. Decided July 5, 1994, at 9:05 A.M.

Wayne K. Bordeau pleaded guilty in the Kent Circuit Court, Robert A. Benson, J., of breaking and entering a motor vehicle with the intent to steal property valued over $5 and of being a second-time habitual offender. The defendant was sentenced to 1½ to 5 years of imprisonment, and he appealed.

The Court of Appeals *held:*

1. The trial court did not clearly err in denying the defendant's motion to suppress evidence obtained by the police in an investigatory stop of an automobile in which the defendant was a passenger. Under the facts of this case, the officer who stopped the automobile had a reasonable, articulable, and particular suspicion that the automobile was the getaway vehicle of the perpetrators of the breaking and entering.

2. The sentence imposed was proportionate to the offense and the offender.

Affirmed.

*William A. Forsyth,* Prosecuting Attorney, and *Melody R. Leavenworth,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*), for the defendant on appeal.

Before: DOCTOROFF, C.J., and TAYLOR and M. G. HARRISON,* JJ.

TAYLOR, J. Defendant pleaded guilty of breaking and entering a motor vehicle with the intent to steal property valued over $5, MCL 750.356a; MSA 28.588(1), and habitual offender-second offense, MCL 769.10; MSA 28.1082. A condition of defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant's plea bargain was that he be allowed to appeal the denial of his motion to suppress the evidence. Defendant argues that the evidence was obtained illegally because the police did not have an individualized and objective basis for the investigative stop. Alternatively, defendant argues that his sentence of 1½ to 5 years is disproportionate. We affirm.

At approximately 4:30 A.M. on August 27, 1992, a witness phoned police to report three men breaking into a pickup truck across the street from her home on Curwood Street in Kentwood, Michigan. The witness stated that the men seemed to be taking things from the truck, that one of the men was carrying a large object, and that the men made several trips back and forth to the truck as if they were "going to a car or something." The police dispatcher put the report out over the radio and then called the witness back to ask if the suspects were still there. The witness said that they were, but that they were starting to head south on her street on foot. At that point, the witness testified, it started to rain.

Sergeant Hiram Collins of the Kentwood Police Department testified that when he heard the radio report he was very close to the location of the reported crime and that it took him only a minute to get to Curwood Street. He parked his car at the corner of Curwood and Pickett, the nearest cross street south of the witness' address. Sergeant Collins was aware that another police car had arrived at a location to the north of the witness' address and that nobody had left the area in that direction.

Within one minute of the time he arrived on Curwood Street, Sergeant Collins observed a car heading south on Curwood from the same area in which the reported crime had occurred. Although

he knew that the witness had not seen the three men get into a car, he knew from experience that use of a getaway vehicle "was consistent with what these guys do when they're going to rip off a car. They park a car down the road. . . ." Sergeant Collins testified that he had dealt with twenty or thirty similar crimes that summer alone and that he had been a Kentwood police officer for twenty-two years. He also testified that the car he observed heading south on Curwood was the only car on the street at that time.

Sergeant Collins observed two men in the front seat of the car. He knew that the witness had reported seeing three men, but it was dark and the back windows of the car were smoked glass, preventing him from seeing if there were any passengers in the back seat. He pulled the car over and, subsequently, stereo equipment was observed in the back, which the owner of the pickup truck later identified as his property. Defendant was a passenger in the car.

Defendant was charged with breaking and entering a motor vehicle with the intent to steal property valued at over $5, MCL 750.356a; MSA 28.588(1), and habitual offender-third offense, MCL 769.11; MSA 28.1083. In exchange for the prosecutor's agreement not to bring an additional charge of breaking and entering a dwelling, and to dismiss the habitual offender-third offense information against him, defendant pleaded guilty of breaking and entering a motor vehicle and habitual offender-second offense, MCL 769.10; MSA 28.1082.

Defendant also filed a motion to suppress the evidence against him, which was denied. An additional condition of defendant's plea bargain was that he would be allowed to appeal this denial of his motion to suppress. It is the denial of this

motion that is the precise legal issue presented for review.

"This Court will not disturb a trial court's ruling at a suppression hearing unless that ruling is found to be clearly erroneous." *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). However, the underlying issue before us is "the strict application of a constitutional standard to uncontested facts. Application of constitutional standards by the trial court is not entitled to the same deference as factual findings." *People v Nelson,* 443 Mich 626, 631, n 7; 505 NW2d 266 (1993).

The requirements of a constitutionally proper investigative stop are:

> The totality of the circumstances as understood and interpreted by law enforcement officers, not legal scholars, must yield a particular suspicion that the individual being investigated has been, is, or is about to be engaged in criminal activity. That suspicion must be reasonable and articulable . . . . [*Nelson* at 632 (citations omitted).]
>
> *       *       *
>
> The [law enforcement officer's assessment of the circumstances] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. [*United States v Cortez,* 449 US 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981).]

In the instant case, Sergeant Collins testified that within a minute of receiving the radio report he was at a location where he would see anyone leaving the scene of the crime in the direction testified to by the witness; that in his experience these types of thieves have a getaway car in the

area; that there were no cars on the road other than the one that he stopped to investigate in which defendant was a passenger; and that, in the totality of these circumstances, he had a particular suspicion that the vehicle and its passengers were involved in the reported crime.

> There is no bright line rule to test whether the suspicion giving rise to an investigatory stop was reasonable, articulable, and particular. Common sense and everyday life experiences predominate over uncompromising standards. Therefore, deference should be given to a law enforcement officer of twenty-[two] years. . . . In analyzing the totality of the circumstances, the law enforcement officers are permitted, if not required, to consider "the modes or patterns of operation of certain kinds of lawbreakers. From [this] data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." [*Nelson, supra* at 635-636 (citations omitted).]

The suspicion which led Sergeant Collins to stop defendant's vehicle was reasonable in the context of the circumstances and the sergeant's experience of twenty-two years. It was particular in that the vehicle was coming from the area of the reported crime, in the direction reported by the witness, and was the only vehicle on the road in that area.

Defendant's reliance on *People v Coscarelli*, 196 Mich App 724; 493 NW2d 525 (1992), is unavailing. In *Coscarelli,* this Court held that the trial court's denial of the defendant's motion to suppress was clearly erroneous because "the officers candidly admitted that they had no probable cause to believe that defendant was engaged in criminal activity." *Id.* at 727. In the case before us, Sergeant Collins had a reasonable and particularized suspicion directed at the vehicle in which defendant

was a passenger. We also note that *Coscarelli* was decided without the benefit of our Supreme Court's meticulous explication in *Nelson, supra,* of the proper analysis in such cases. The trial court's denial of defendant's motion to suppress was not clearly erroneous.

"Although the sentencing guidelines do not apply to an habitual offender's sentence, the principle of proportionality is still applied to the review of the defendant's sentence." *People v Derbeck,* 202 Mich App 443, 446; 509 NW2d 534 (1993). However, the guidelines are a tool to assist the determination whether defendant's sentence as an habitual offender is proportionate. The habitual offender statute under which defendant was sentenced allows for a maximum term not more than 1½ times the longest term prescribed for a first conviction of the underlying offense. The guidelines range for breaking and entering a motor vehicle with the intent to steal property valued over $5 is 0 to 12 months. Defendant's minimum sentence of 18 months is precisely 1½ times the longest term prescribed for a first conviction of that offense. This is "an indication that defendant's sentence is proportionate." *People v Williams,* 191 Mich App 685, 687; 479 NW2d 36 (1991).

The sentencing judge stated on the record that he had spent extra time considering the appropriate sentence. He cited defendant's juvenile offenses and his previous felony offenses as an adult, one of which occurred while defendant was on probation. The judge did not abuse his discretion. The sentence is proportionate to the offense and the offender. *People v Milbourn,* 435 Mich 630, 635-636; 461 NW2d 1 (1990).

Affirmed.