PEOPLE v YEOMAN

Docket No. 165345. Submitted June 6, 1996, at Grand Rapids. Decided
    August 23, 1996, at 9:25 A.M. Leave to appeal sought.

William E. Yeoman was convicted in the Kent Circuit Court, Robert A.
    Benson, J., of inserting an instrument into a money changer with
    the intent to steal and of being an habitual offender. Before trial,
    the defendant moved to suppress as evidence the 104 quarters,
    empty quarter rolls, scissors, cellophane tape, and dollar bills with
    cellophane tape on the edges that were seized during the search of
    the defendant, a codefendant, and the vehicle in which they were
    riding. A police officer observed the codefendant using a money
    changer late at night at a car wash. When the codefendant saw the
    officer enter the parking lot of the car wash, he left the money
    changer and entered the nearby vehicle driven by the defendant,
    which then left the car wash. The officer observed that several dol-
    lars in quarters had been left in the tray of the money changer.
    Moments later the officer observed the defendant's vehicle drive by
    the car wash, whereupon the officer stopped the vehicle. During
    the officer's inquiry concerning the activities at the car wash, he
    received word from another officer that the owner of the car wash
    had reported that money had been stolen from the money changer,
    whereupon the defendant and the codefendant were arrested, and
    they and their vehicle were searched. The trial court determined
    that the evidence had been seized pursuant to a lawful arrest fol-
    lowing a reasonable investigatory stop. The court, believing that
    the underlying offense was a felony to which the sentencing guide-
    lines did not apply, sentenced the defendant to a prison term of
    from four to fifteen years without preparing a sentencing informa-
    tion report (SIR). The defendant appealed.

The Court of Appeals held:

1. The events observed by the police officer at the car wash,
while they might have had an innocent explanation, were sufficient
to arouse a reasonable suspicion on the part of the officer to justify
his investigatory stop of the vehicle and to detain the defendant
and the codefendant briefly while he was making inquiries to con-
firm or dispel the suspicions. Upon learning that a felony had been
committed at the car wash, the officer was justified in placing the
occupants of the vehicle under arrest and in searching the occu-

pants and their vehicle incident to that arrest. The trial court properly permitted the admission into evidence of the articles seized during the search.

2. Because any error resulting from the prosecutor's single reference during opening statement that the officer was a "good cop" could have been cured by an instruction by the court and no miscarriage of justice will result from the failure to review the question, the failure to object at trial to the remark precludes appellate review.

3. Because the officer was diligently pursuing a means of investigation that was likely to confirm or deny quickly his suspicions, the detention of the defendant and the codefendant, even if it was as long as the forty-five minutes that the defendant claims, was proper. Accordingly, the trial court did not abuse its discretion by refusing to compel certain witnesses to testify at the suppression hearing concerning the timing of the events leading up to the arrest.

4. Even assuming that the actions here would constitute the misdemeanor of using a slug in a coin-operated vending machine, MCL 752.801; MSA 28.471, the prosecutor, in the exercise of his broad discretion to determine what charge to bring where more than one statute applies, properly could charge the defendant with inserting an instrument into a money changer with the intent to steal, MCL 752.811; MSA 28.643(101), because the circumstances clearly showed that the defendant aided and abetted in the commission of that felony.

5. The state was not obligated to offer access to a law library to the defendant for the preparation of his trial defense where assistance of counsel had been offered to him, but had been refused.

6. The trial court erred in concluding that the sentencing guidelines do not apply to a conviction under MCL 752.811; MSA 28.643(101), because that felony is one of the felonies listed in the burglary provisions of the sentencing guidelines. Although the defendant is an habitual offender to whom the sentencing guidelines do not apply, the sentencing guidelines nevertheless provide that a trial court must fill out an SIR for the underlying offense. *People v Zinn*, 217 Mich App 340 (1996), held that the appropriate remedy under these circumstances is to remand the matter to the trial court solely for the administrative task of completing a written SIR. That holding is controlling precedent pursuant to Administrative Order No. 1996-4. However, but for the effect of the administrative order, this panel would have held that the defendant lacked standing to raise this issue, because, inasmuch as neither the failure of the trial court to prepare an SIR before sentencing nor the prepara-

tion of an SIR on remand will have any effect on his sentence, the defendant had no legally protected interest that would be adversely affected in a manner different from the citizenry at large.

7. In light of the defendant's criminal history and the present offense, the trial court did not abuse its discretion in imposing the sentence that it did.

Affirmed, but remanded for the preparation of a sentencing information report.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — LEGAL ASSISTANCE — LAW LIBRARIES.

A state is not obligated to offer a criminal defendant access to a law library for the preparation of a trial defense once it has fulfilled its constitutional obligation to provide competent assistance of counsel.

2. CRIMINAL LAW — HABITUAL OFFENDERS — SENTENCING INFORMATION REPORTS.

The sentencing guidelines provide that a trial court must fill out a sentencing information report for the underlying offense before sentencing a criminal defendant as an habitual offender; the appropriate remedy where the trial court fails to prepare a sentencing information report before sentencing a defendant as an habitual offender is to remand the matter to the trial court solely for the administrative task of completing a written sentencing information report.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the people.

*William E. Yeoman*, in propria persona.

Before: O'CONNELL, P.J., and SAWYER and G. R. CORSIGLIA,* JJ.

O'CONNELL, P.J. Following a jury trial, defendant was convicted of inserting an instrument into a money changer with the intent to steal, MCL 752.811(a); MSA 28.643(101)(a), and being an habitual

---

* Circuit judge, sitting on the Court of Appeals by assignment.

offender with three previous felonies. MCL 769.12; MSA 28.1084. Defendant was sentenced to four to fifteen years in prison. We affirm defendant's conviction, but remand for the purely administrative function of the preparation of a sentencing information report (SIR).

After midnight on September 15, 1992, police officer Robert Anderson observed Doug Lawrence using a money changer at a car wash. When Officer Anderson pulled into the car wash parking lot, Lawrence abruptly left the money changer, got into a vehicle driven by defendant, and rode away. After defendant's vehicle left the car wash, Officer Anderson noted that several dollars' worth of quarters had been left in the change tray of the money changer. Moments later, Officer Anderson observed defendant's vehicle drive past the car wash, as if its occupants were checking if Anderson had left. Officer Anderson left the car wash and pulled defendant's vehicle to the side of the road. During a subsequent search of the occupants and the vehicle, officers obtained 104 quarters, empty quarter rolls, scissors, cellophane tape, and dollar bills that had cellophane tape on the edges. Testimony at trial later established that bills altered in this manner could be used to defraud the type of money changers used at the car wash.

I

Defendant first claims that the trial court erred in failing to suppress the evidence found on defendant and in his vehicle after the vehicle was stopped by police. Defendant argues that the circumstances did not justify an investigative stop under *Terry v Ohio,*

392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and, accordingly, that any evidence obtained incident to the stop must be suppressed. We will affirm the decision of the circuit court unless clearly erroneous, that is, unless this Court is left with the definite and firm conviction that a mistake has been made. *People v Christie (On Remand)*, 206 Mich App 304, 308; 520 NW2d 647 (1994).

In order for law enforcement officers to make a constitutionally proper investigative stop, the "totality of the circumstances as understood and interpreted by law enforcement officers, not legal scholars, must yield a particular suspicion that the individual being investigated has been, is, or is about to be engaged in criminal activity," and "[t]hat suspicion must be reasonable and articulable." *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993). In analyzing the totality of the circumstances, common sense and everyday life experiences predominate over uncompromising standards, and law enforcement officers are permitted, if not required, to consider the modes or patterns of operation of certain kinds of lawbreakers. *Id.* at 635-636. "The question is not whether the conduct is innocent or guilty. Very often what appears to be innocence is in fact guilt, and what is indeed entirely innocent may in some circumstances provide the basis for the suspicion required to make an investigatory stop." *Id. at* 632.

When dealing with a vehicle, the reasonable and articulable suspicion must be directed at the vehicle. *People v Bordeau*, 206 Mich App 89, 93; 520 NW2d 374 (1994). Fewer foundational facts are necessary to support a finding of reasonableness where a moving vehicle is involved than where a house or home is

involved. *Christie, supra* at 308-309. Also, a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search are conducted by the police. *Id.*

Although the events observed by Officer Anderson at the car wash may have had innocent explanations, they were also sufficient, under the circumstances, to reasonably arouse his suspicion. The previous night, Officer Anderson had been involved in the arrest of suspects who had defrauded vending machines by placing dollar bills into the machines and retrieving them after a selection had been made. Considering the totality of the circumstances—the time of night, the fact that it appeared that the money changer was not used for the purchase of car wash services, Lawrence's hurried retreat from the area when Officer Anderson arrived, the abandonment of quarters in the change tray, defendant's subsequent driving past the car wash, and Officer Anderson's previous experience with the "modes or patterns of operation [characteristic] of" this type of criminal behavior—we cannot say that we are left with the definite and firm conviction that the trial court made a mistake and clearly erred in ruling that Officer Anderson's suspicions were reasonable as perceived by a law enforcement officer. *Nelson, supra.* Therefore, finding no clear error, we affirm the court's conclusion that the incident in question was a proper *Terry* investigation stop.

Because the stop itself was proper, Officer Anderson was permitted to briefly detain the vehicle and make reasonable inquiries aimed at confirming or dispelling his suspicions. *Nelson, supra* at 637. During Officer Anderson's inquiry, he received information

from another officer that the owner of the car wash had reported money missing from the money changer. This information, that a felony had been committed, coupled with the immediately preceding events giving the officer a reasonable suspicion that the occupants of the vehicle had been engaged in criminal activity, justified the arrest of defendant without a warrant. MCL 764.15(1)(c); MSA 28.874(1)(c); *People v Richardson*, 204 Mich App 71, 79; 514 NW2d 503 (1994).

Once an officer has made a lawful arrest of the occupant of a vehicle, the officer may search the occupant, see *People v Daniel*, 207 Mich App 47, 52; 523 NW2d 830 (1994), as well as the entire passenger compartment of the vehicle. *People v Catanzarite*, 211 Mich App 573, 581; 536 NW2d 570 (1995). Therefore, the evidence seized during the search of defendant and the vehicle was properly obtained, and the trial court did not clearly err in failing to suppress it.

II

Next, defendant claims that the prosecution improperly bolstered the credibility of the primary police witness, thereby depriving defendant of a fair trial. During his opening statement, the prosecutor referred to Officer Anderson as a "good cop." Defendant failed to object to this remark at trial. Because an objection and concomitant curative instruction could have rectified any error and a failure to review this issue would not result in a miscarriage of justice, we decline to review further this allegation of error. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

III

Next, defendant claims that he was prejudiced by the trial court's failure to compel witnesses on his behalf to testify during the suppression hearing. We review the trial court's decision regarding compulsory process for an abuse of discretion. *People v Loyer*, 169 Mich App 105, 113; 425 NW2d 714 (1988).

Defendant contends that because the trial court failed to compel certain witnesses to testify on his behalf during the suppression hearing, he was unable to establish that the evidence against him was illegally obtained. Defendant submits that he was detained for far longer than was justifiable and that these witnesses were necessary to establish the timing of the incidents surrounding the stop, arrest, and search. However, because the investigating officer was diligently pursuing a means of investigation likely to confirm or deny quickly his suspicions, the detention, even if as long as forty-five minutes as defendant claims, was not improper. *People v Chambers*, 195 Mich App 118, 121, 123; 489 NW2d 168 (1992). Therefore, the trial court did not abuse its discretion in declining to compel the witnesses to testify.

IV

Next, defendant claims that he was charged under the wrong statute. The specific charge to file against a defendant is a decision that rests in the prosecutor's discretion, and such decisions will be reviewed for an abuse of that discretion. *People v Ford*, 417 Mich 66, 93; 331 NW2d 878 (1982).

Defendant was charged under MCL 752.811; MSA 28.643(101), which states that a person shall be guilty of a felony if he "[e]nters or forces an entrance, alters

or inserts any part of an instrument into any parking meter, vending machine dispensing goods or services, money changer or any other device designed to receive currency or coins with the intent to steal." Clearly, under the circumstances of this case, defendant's conduct—aiding and abetting in the insertion of doctored currency into a money changer in an attempt to defraud the machine—falls within the type of conduct prohibited by the statute.

Defendant submits that he should instead have been charged with the misdemeanor of use of a "slug" in a vending machine. MCL 752.801; MSA 28.471. Even assuming that MCL 752.801; MSA 28.471 applies to this offense,[1] the prosecutor is the chief law enforcement officer of the county and has the right to exercise broad discretion in determining under which of two arguably applicable statutes a prosecution will be instituted. *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683; 194 NW2d 693 (1972). If warranted by the facts, the prosecutor has the discretion to proceed under any applicable statute. *Id.* at 684. This is true even where one applicable offense is a felony and one is a misdemeanor. *Ford, supra* at 93.

Therefore, because the facts warranted initiating a prosecution under MCL 752.811; MSA 28.643(101), it was proper for the prosecutor to bring such a charge against defendant.

---

[1] Because it is not necessary to our resolution of this issue on appeal, we do not consider whether the use of an altered dollar bill, that is, paper currency, may be considered a violation of MCL 752.801; MSA 28.471, which prohibits the use of "slugs" with respect to vending machines "operated by lawful coin."

V

Next, defendant claims that his constitutional rights were violated because he was denied access to a law library to further his in propria persona defense. We disagree. The state satisfied its constitutional obligation when it offered defendant the assistance of counsel, which he declined. *People v Mack*, 190 Mich App 7, 24; 475 NW2d 830 (1991). The state was not required to offer defendant law library access once it fulfilled its obligation to provide him with competent legal assistance. *Id.*

VI

Last, defendant claims error in his sentencing. Specifically, defendant argues that he must be resentenced because the trial court failed to prepare an SIR and, as a result, imposed a disproportionate sentence. As will be explained, we would conclude that, though it was error for the trial court to fail to prepare an SIR, recent Supreme Court treatment of this area of the law deprives defendant of standing to raise this issue. Accordingly, finding defendant's sentence proportionate, we would affirm. However, we are constrained to remand for the administrative task of the preparation of an SIR because this Court, in *People v Zinn*, 217 Mich App 340; ___ NW2d ___ (1996), recently concluded that was the appropriate remedy, and that precedent is binding on us. Administrative Order No. 1996-4. But for this Court's decision in *Zinn*, our disposition of this case would differ. We hereby invoke the conflict resolution procedure set forth in Administrative Order No. 1996-4.

We agree that an SIR should have been prepared in the present case.[2] At defendant's sentencing, the court mistakenly concluded that a conviction of inserting an instrument into a money changer with intent to steal, MCL 752.811(a); MSA 28.643(101)(a), was a felony to which the sentencing guidelines do not apply. However, the crime of which defendant was convicted is but a subset of the crime of breaking and entering a coin-operated device, MCL 752.811; MSA 28.643(101), a felony that is part of the burglary crime list. Michigan Sentencing Guidelines (2d ed), pp 1, 12. Thus, the guidelines do apply to this offense, and the sentencing court should have completed an SIR before sentencing defendant.

However, in light of recent Supreme Court clarification of this area of the law, we do not believe that defendant has standing to raise this issue, because, regardless of what a properly prepared SIR would have reflected, it would have had no effect on defendant's sentence.

The law pertaining to the preparation of sentencing information reports in the context of habitual offenders has been in something of a state of tumult recently. Before our Supreme Court's decision in *People v Cervantes*, 448 Mich 620; 532 NW2d 831 (1995), the sentencing guidelines were considered a "helpful tool" when determining proportionate sentences in the context of habitual offenders despite the fact that the guidelines do not, strictly speaking, apply to habitual offender sentences. See, e.g., *People v Martinez (After Remand)*, 210 Mich App 199, 201; 532 NW2d 863 (1995); *People v Derbeck*, 202 Mich App

---

[2] See *People v Haacke*, 217 Mich App 434; ___ NW2d ___ (1996).

443, 446-447; 509 NW2d 534 (1993). However, because the guidelines were considered useful, sentencing courts were required to compute them before sentencing habitual offenders. *Martinez, supra* at 201; *Derbeck, supra* at 446.

The Supreme Court altered this established rule of law in *Cervantes*. In that case, a majority of our Supreme Court concluded that the sentencing guidelines have no place in the sentencing of habitual offenders. However, no one rationale for so holding garnered the signatures of a majority of the justices. See *Cervantes, supra* at 621-630 (opinion of Justice RILEY, joined by Justices MALLETT and WEAVER), 637-638 (opinion of Justice BOYLE). In short, a majority agreed concerning the result, but not concerning the rationale for reaching that result.

This Court, in its initial attempt to apply *Cervantes*, concluded that because a majority of the Supreme Court had not agreed concerning the rationale underlying its holding, no new rule of law had been established. In *People v Gatewood*, 214 Mich App 211, 213; 542 NW2d 605 (1995), vacated 450 Mich 1021 (1996), a defendant convicted of being an habitual offender claimed that he was entitled to be resentenced because the sentencing court had erred in scoring the sentencing guidelines. This Court was thus called upon, in the wake of *Cervantes*, to "determine whether the sentencing guidelines are still pertinent in determining an habitual offender's sentence." *Id.* at 212. Given that "if a majority of the court agree[s] on a decision in [a] case, but less than a majority could agree on the reasoning for that decision, the decision has no stare decisis effect," 20 Am Jur 2d, Courts, § 159, p 443, citing *Grimm v Ford Motor Co*, 157 Mich

App 633; 403 NW2d 482 (1986), this Court concluded that because "the *Cervantes* opinion does not present a majority opinion concerning this issue[, w]e are bound to follow past precedent and will continue to use the guidelines as a starting point and useful tool in determining whether an habitual offender's sentence is proportionate." *Gatewood, supra* at 213. Finding that the defendant's argument had merit, this Court, accordingly, remanded the case for recalculation under the guidelines and resentencing. *Id.* at 213-214.

*Gatewood* was a short-lived decision. Four months after *Gatewood* was released, the Supreme Court, in lieu of granting leave to appeal, vacated this Court's decision and remanded the case back to this Court. *People v Gatewood,* 450 Mich 1021 (1996). The Supreme Court stated that this Court "erred" in its interpretation of *Cervantes* because "a majority of this Court agreed that appellate review of habitual offender sentences using the sentencing guidelines is inappropriate." *Id.* The order vacating *Gatewood* made no mention of the differing rationales adduced by the justices in reaching their decision.

On remand, this Court held that review of an habitual offender sentence is limited to considering whether the sentence violates the principle of proportionality as set forth in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), *without* reference to the guidelines.[3] *People v Gatewood (On Remand),* 216

---

[3] A panel of this Court, in *People v Kerperien,* (Docket No. 148785), issued an opinion on March 8, 1996, that relied on this Court's first *Gatewood* opinion in concluding that where a court fails to prepare an SIR when sentencing an habitual offender, the proper remedy is to vacate the defendant's sentence and to remand for the completion of an SIR and for resentencing after consulting the applicable guidelines range. However,

Mich App 559; 550 NW2d 265 (1996). Thus, the *Gatewood (On Remand)* panel, in effect, adopted the rationale advanced by the lead opinion in *Cervantes*, that signed by Justices RILEY, MALLETT, and WEAVER.[4]

In summary, regardless of the law of stare decisis, our Supreme Court has made clear that the sentencing guidelines no longer have a place in determining the proportionality of an habitual offender's sentence. While the proportionality of an habitual offender's sentence is still reviewed under the abuse of discretion standard, the guidelines have no bearing with regard to whether an abuse has occurred.

Returning to the present case, defendant, an habitual offender, contends that the sentencing court erred in failing to prepare an SIR before imposing sentence. The law in this area is clear: "the trial court must fill out a sentencing information report" when sentencing an habitual offender. *Derbeck, supra* at 446; see also Michigan Sentencing Guidelines (2d ed), p 1. Therefore, we agree that error occurred.

However, we would find that, in light of the case law discussed above, defendant has no standing to

---

the *Kerperien* panel, following the Supreme Court's vacation of *Gatewood*, withdrew from publication and vacated its original opinion, albeit in the highly unorthodox fashion of issuing an *unpublished* opinion to that effect on rehearing. *People v Kerperien (On Rehearing)*, unpublished opinion per curiam of the Court of Appeals, issued June 28, 1996 (Docket No. 148785). Thus, *Kerperien* is not binding precedent.

[4] We would note that the *Gatewood (On Remand)* panel subtly indicated its disagreement with the Supreme Court's order vacating the original *Gatewood* opinion where it stated "[p]ursuant to that *order*, appellate review of habitual offender sentences using the sentencing guidelines in any fashion is inappropriate," *Gatewood (On Remand), supra* at 560 (emphasis supplied), rather than "pursuant to *People v Cervantes*." By this choice of words, the panel suggested that it was not the *Cervantes* opinion itself that established this new rule of law, but, rather, the Supreme Court's subsequent order in *Gatewood*.

raise this issue. As set forth in *House Speaker v State Administrative Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993): "Standing is a legal term used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy. However, evidence that a party will engage in full and vigorous advocacy, by itself, is insufficient to establish standing." To be deemed to have standing, "one must have a legally protected interest that is in jeopardy of being adversely affected." *Tallman v Milton*, 192 Mich App 606, 612-613; 482 NW2d 187 (1992). In other words, "[s]tanding requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large." *House Speaker, supra* at 554. Although usually raised in the civil context, the question of standing pertains to criminal matters as well. *People v Smith*, 420 Mich 1, 11-12; 360 NW2d 841 (1984). An appellate court need not review an issue in which the party alleging error lacks standing. *Grace Petroleum Corp v Public Service Comm*, 178 Mich App 309, 312; 443 NW2d 790 (1989).

Thus, though a somewhat "amorphous" concept, *Smith, supra* at 11, quoting *Flast v Cohen*, 392 US 83, 99; 88 S Ct 1942; 20 L Ed 2d 947 (1968), standing requires a showing of two elements: first, that the party will devote himself to the sincere and vigorous advocacy of his position, and, second, that the party has a legally protected interest at stake that differs from the interest of the citizenry at large.

In the present case, we have no doubt that defendant satisfies the first prong. A criminal defendant has an interest like no other in the sentence he receives.

His vigorous advocacy of error in his sentence may be presumed.

However, in light of *Cervantes* and *Gatewood (On Remand)*, defendant fails to satisfy the second prong, which is to say, he has no legally protected interest in the preparation of an SIR. As explained in the sentencing guidelines themselves, the preparation of an SIR in the case of an habitual offender is not for the benefit of the defendant himself—"This information will aid in the development of guidelines to cover habitual offenders." Michigan Sentencing Guidelines (2d ed), p 1. As elucidated by this Court in *People v Strickland*, 181 Mich App 344, 346; 448 NW2d 848 (1989), the preparation of an SIR in the case of an habitual offender "is done to aid in the development of guidelines for habitual offender sentencings, rather than to guide the sentencing court in determining the habitual offender's sentence." Further, as made clear in *Gatewood (On Remand)*, *supra* at 560, "appellate review of habitual offender sentences using the sentencing guidelines in any fashion is inappropriate." Thus, defendant urges us to remand the case for resentencing despite the fact the requirement that an SIR be prepared was not established for his benefit, Michigan Sentencing Guidelines (2d ed), p 1, and will in no way benefit him on remand, *Gatewood (On Remand)*, *supra* at 560.

We would conclude that defendant lacks standing in the present context. In short, defendant seeks to benefit from an error in the purely "administrative function" of preparing an SIR. *Strickland, supra.* Given the defendant's lack of standing, "[w]e see no need . . . to engage the trial court in the futile exercise of marching up the sentencing hill again, only to

hand out the same sentence and march back down again." *People v Ristich,* 169 Mich App 754, 759; 426 NW2d 801 (1988), citing *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972).[5]

Therefore, having concluded that defendant lacks standing with respect to his contention that the sentencing court failed to prepare an SIR, our only remaining inquiry is the proportionality of the sentence itself. The sentence of an habitual offender must be proportionate as set forth in *People v Milbourn, supra. Gatewood (On Remand), supra.* Here, while the offense itself was relatively minor, defendant's criminal history includes three prior felonies and twenty-nine prior misdemeanors. In light of defendant's criminal history and the present offense, we find no abuse of discretion in the four- to fifteen-year sentence imposed. *Id.*

However, as alluded to above, this Court has previously addressed the issue of preparation of an SIR in the case of an habitual offender and has come to the conclusion that a remand for the preparation of an SIR is required despite the fact that it will have no effect on the defendant's sentence. In *Zinn, supra,* this Court was faced with a substantially identical factual situation. Though conceding that preparation of an SIR under facts as those presently before this Court would be a "solely . . . administrative task," this Court held that a remand was required because the preparation of an SIR was mandatory. *Id.* at 350.

---

[5] This decision should not be read as condonation of a trial court's failure to complete an SIR when sentencing an habitual offender. The SIR must still be completed to aid in the development of guidelines for habitual offenders. Michigan Sentencing Guidelines (2d ed), p 1; *Derbeck, supra* at 446.

The *Zinn* panel did not, however, address the issue of standing.[6] While we agree that the preparation of an SIR is, indeed, required, we do not believe that a defendant has standing to raise the issue. We are confident that had the issue of standing been addressed, the *Zinn* Court would have reached the conclusion set forth in this opinion.

Nevertheless, we are presently bound by the *Zinn* decision and respectfully follow it. Therefore, we order this case remanded for the preparation of an SIR.

Affirmed, but remanded for the purely administrative function of the preparation of a sentencing information report.

---

[6] The treatment of this issue in *Zinn* at 350 is set forth, *in toto*:

Nonetheless, although the sentencing guidelines do not apply to habitual offenders, the trial court must fill out an SIR for the underlying offense. *People v Derbeck*, 202 Mich App 443, 446; 509 NW2d 534 (1993); Michigan Sentencing Guidelines (2d ed), p 1. "This is done to aid in the development of guidelines for habitual offender sentencings, rather than to aid the sentencing court in determining the habitual offender's sentence." *People v Strickland*, 181 Mich App 344, 346; 448 NW2d 848 (1989). Thus, we remand this matter to the trial court solely for the administrative task of completing a written SIR.