# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES HOSEY JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2016

No. 328360
Macomb Circuit Court
LC No. 2014-004488-FC

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of 9 to 48 months' imprisonment for each felonious assault conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

On November 14, 2014, defendant became involved in an altercation with Vivian Johnson, his wife at the time, and his mistress, Varee Roberson. Varee, a Highland Park police officer, met defendant while he was a volunteer reserve officer for the Highland Park Police Department. On November 14, 2014, Vivian suspected defendant of having another extramarital affair. She contacted Varee, who advised that she had not had relations with defendant on that day. Defendant, shortly thereafter, came home on his lunch break from work shortly and was confronted by Vivian. Defendant denied having an affair, but Vivian refused to believe him and told him that their marriage was over. While they were arguing, Varee arrived at Vivian and defendant's home. Vivian and defendant testified that Varee was visibly intoxicated when she arrived.

Varee and Vivian then both began confronting defendant about his alleged affair. At some point during the argument, the parties decided to go to the liquor store. Upon returning, defendant received a telephone call from a woman. Vivian, believing it to be the new mistress, grabbed defendant's telephone away from him and attempted to confront the person. During this confrontation, all three parties ended up in defendant and Vivian's bedroom. During trial, defendant, Varee, and Vivian provided differing testimony regarding what happened in the bedroom. Defendant reported that after he got his telephone back from Vivian, he planned on leaving to go to his mother's house, but first intended to get his gun from the nightstand next to

-1-

the bed. Defendant testified that he was properly licensed to carry the gun and that he was only grabbing it because he always carried it when he was not working. Defendant testified that when he reached for the gun, Varee lunged at him, causing him to attempt to jerk away from her, which resulted in the weapon being fired. Defendant testified that he never intended to shoot anyone, never made any threatening remarks to his wife or Varee, and never intended to kill Vivian.

Varee testified that defendant, after reobtaining possession of his telephone from Vivian, grabbed his gun, pointed it at Vivian, and fired. Then, he turned the gun on Varee and stated, "I should kill you, too." Vivian testified that the argument was actually between Varee and defendant, but that she could not see the position of the gun while Varee was arguing with defendant because defendant's back was to Vivian. Vivian testified that defendant did grab his gun from the nightstand next to the bed, however, and that she told defendant not to kill Varee in her house. Vivian further testified that she never felt threatened, defendant did not point the gun at her, she believed that the gun fired accidentally, and the bullet went nowhere near where she was standing.

All the parties agree that, at some point during the altercation in the bedroom, Varee began begging defendant to spare her life by reminding defendant that she had a son. Defendant left the house immediately after the gun was fired. After defendant left, Vivian and Varee did not call the police. Instead, Vivian and Varee both called their friends and then began getting ready to go out to a bar together.

When they were heading to Vivian's car that was parked in the garage, they discovered that defendant's car was in the driveway, blocking them in. Once again, the parties disagreed on the events that took place in the garage. Varee testified that defendant entered the garage with his gun drawn, threatened to kill Vivian, and had his gun pointed at her. Varee recalled that she then pulled her gun on defendant, and the two had a standoff until the police arrived. Vivian, on the other hand, testified that upon seeing defendant walking in the garage with his gun at his side, she dove into the driver's seat of her car, lowered her head below the dashboard, and therefore could not see any interaction between defendant and Varee. Vivian testified that she could hear defendant and Varee arguing and told her friend, with whom she was on the phone, to call the police. Vivian testified that she was afraid because defendant had a gun and she did not know his state of mind, but that she did not think he intended to hurt or kill anyone. Defendant testified that he only returned to the house after Vivian called him and told him to come and collect his belongings. He stated that he had his gun in his hand when he entered the garage because the gun had been in his lap, as it always was, while he was driving. Further, defendant testified that he only drew his gun on Varee after she first pointed her gun at him and it was down, but pointed in the direction of Varee when the police arrived.

Officer Daniel Merciez of the Center Line Police Department testified that in response to a 911 call, he arrived at defendant's home. Upon arrival he heard a male and female yelling at each other in the garage and saw defendant pointing a handgun at Vivian's head while she was seated in the driver's seat of a vehicle inside the garage. The driver's side door was open, and Officer Merciez observed Varee pointing her gun at defendant's head. He ordered both to drop their weapons.

The situation resolved with Vivian and Varee fleeing the garage to safety, and defendant eventually being arrested and charged with one count of assault with the intent to commit murder, MCL 750.83, one count of felonious assault, and one count of felony-firearm. During pretrial, defendant moved the trial court to quash the warrant, complaint, and felony information against him on the grounds that the prosecution failed to provide adequate evidence of lack of self-defense at the preliminary examination to fulfill the requirements of MCL 780.961(2). The trial court denied that motion, and eventually the case went to trial. With regard to the count of assault with the intent to commit murder, the jury found defendant guilty of the lesser offense of felonious assault.

On appeal, defendant contends that the prosecutor abused its charging power by charging defendant with assault with the intent to commit murder and that the overcharging tainted the fairness of the entire trial, thus violating his Sixth Amendment right to a fair trial. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant argues that the issue was preserved by his pretrial motion to quash. However, as discussed *supra*, that motion was only based on the argument that the prosecution had not fulfilled the requirements of MCL 780.961(2), which is not the issue raised on appeal. Therefore, defendant did not raise the issues presented in this appeal to the trial court, and as such, they are not preserved for this Court's review. See *id*.

We review the above unpreserved claim for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* As such, reversal is only warranted if defendant was actually innocent and the plain error caused defendant to be convicted or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 763-764. With regard to defendant's specific allegations that the prosecutor improperly charged defendant with assault with the intent to commit murder, "Courts [] review a charging decision under an 'abuse of power' standard, questioning whether a prosecutor has acted in contravention of the constitution or the law." *People v Barksdale*, 219 Mich App 484, 488; 556 NW2d 521 (1996).

Defendant argues that the prosecution abused its charging power by charging defendant with assault with the intent to commit murder when the evidence on the record did not support that charge. We disagree.

"It is well settled that 'the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor.'" *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999), quoting *People v Venticinque*, 459 Mich 90, 100; 586 NW2d 732 (1998). "The prosecutor is a constitutional officer whose duties are as provided by law." *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683; 194 NW2d 693 (1972), citing Const 1963, art VII, § 4. As such, when the prosecutor performs those duties on behalf of the people of the state, it is an act of the executive branch of government. See *id*.; see also *Conat*, 238 Mich App at 149

(holding that the duty of the prosecutor to charge defendants "is grounded in the responsibility of the executive branch to enforce the laws."). Considering that, if the judicial branch sought to control or overly regulate "the institution and conduct of prosecutions[,]" then there "would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers." *Genesee Prosecutor*, 386 Mich at 684.

Stated differently, "the prosecutor is the chief law enforcement officer of the county and has the right to exercise broad discretion in determining under which of two arguably applicable statutes a prosecution will be instituted." *People v Yeoman*, 218 Mich App 406, 414; 554 NW2d 577 (1996). Indeed, "[t]he prosecutor has discretion to bring any charges supported by the evidence." *People v Nichols*, 262 Mich App 408, 415; 686 NW2d 502 (2004). "If warranted by the facts, the prosecutor has the discretion to proceed under any applicable statute." *Yeoman*, 218 Mich App at 414. Considering the broad discretion provided to the prosecutor in deciding what to charge, "judicial review of the exercise of that discretion is limited[.]" *Conat*, 238 Mich App at 149. When there is evidence available to support a charge under more than one statute, the prosecutor's broad charging power can only be abused where the prosecutor's choice was "made for reasons that [we]re 'unconstitutional, illegal, or ultra vires.' " *People v Barksdale*, 219 Mich App 488, quoting *People v Morrow*, 214 Mich App 158, 161; 542 NW2d 324 (1995). Therefore, we must consider whether the prosecutor's decision to charge defendant with assault with the intent to commit murder was "warranted by the facts" and "supported by the evidence" of the instant case. See *Yeoman*, 218 Mich App at 414; see also *Nichols*, 262 Mich App at 415.

Assault with the intent to commit murder, MCL 750.83, requires proof of three separate elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010), quoting *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). In the present case, the record contained varying stories about events that occurred on November 14, 2014. While defendant and Vivian testified that defendant never exhibited intent to harm, threaten, or kill anyone, Varee provided differing testimony. Specifically, Varee testified that, while in the bedroom, defendant was engaged in a serious argument with Vivian, which ended when defendant picked up his gun, pointed it at Vivian, and fired at her. Then, after firing the gun at Vivian, defendant turned to Varee and stated, "I should kill you, too." Varee also testified that, while they were in the garage, defendant told Vivian that she should get out of her car so that he could kill her, and proceeded to hold her at gunpoint. Varee's testimony in that regard was supported by police officer testimony that, when he first arrived on the scene and walked into the garage, he saw defendant with his gun drawn on Vivian and pointed directly at her head.

This testimony is enough to provide several inferences that defendant assaulted Vivian with the intent to commit murder. First, defendant pointed a gun at Vivian and pulled the trigger, and according to Varee, the bullet came close to striking Vivian. Next, after shooting at Vivian, defendant told Varee that he should also kill her. Stating that he should kill Varee "too" suggests that when defendant fired his gun at Vivian, he intended that she die. Lastly, both Varee and the responding police officer saw defendant in the garage with his gun pointed at Vivian's head. This is plainly enough evidence to support a charge that defendant intended to kill Vivian on that night.

On appeal, defendant suggests that the prosecutor committed some form of error by relying on Varee's testimony in reaching its decision to charge him with assault with the intent to commit murder, rather than relying on Vivian's and defendant's testimony to the contrary. However, as has been discussed *supra*, an appellate court's power to review the prosecutor's decision to determine what to charge is extremely limited, and certainly does not entertain the ability of an appellate court to consider testimony, weigh credibility, and determine that the prosecutor should have believed certain witnesses over others when making its charging decision. See *Barksdale*, 219 Mich App at 488. Instead, the reviewing court is only permitted to consider whether there was "evidence available" to support the charge. *Id*. The testimony elicited at trial by the prosecution plainly presented facts that supported charging defendant with assault with the intent to commit murder. Defendant's contention that this Court and the prosecutor should have weighed the credibility of the witnesses – by writing off Varee's testimony and, instead, choosing to believe Vivian and defendant – when determining what to charge is axiomatically improper, considering that was not the standard espoused by this Court in *Barksdale*, 219 Mich App at 488, and that the duty to consider testimony and weigh credibility of witnesses lies solely with the jury. See, *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Considering that there was evidence on the record to support the charge, the prosecutor's power to charge could only have been abused if the prosecutor chose to charge defendant due to "reasons that are unconstitutional, illegal, or ultra vires." *Barksdale*, 219 Mich App at 488. Defendant, however, provides no argument on appeal that the prosecution had some ulterior motive for allegedly overcharging defendant, nor does the record reveal any evidence thereof. Rather, defendant's entire argument regarding the prosecutor's alleged improper charge of assault with the intent to commit murder was that the charge was not supported by the record. Because this argument is meritless, defendant's claim that the prosecution abused its charging power is likewise without merit. See *id*. Therefore, since there was no error at all in the prosecution's charging of defendant, there was obviously no plain error affecting defendant's substantial rights regarding this unpreserved argument brought by defendant on appeal. See *Roscoe*, 303 Mich App at 648.[1]

Defendant also briefly states that his trial counsel was ineffective for failing to object to the prosecutor's alleged over-charging of defendant. However, this claim was not presented to the trial court, does not appear in defendant's statement of questions presented, and his "argument" on this issue consists of a single statement in his brief. We need not address arguments first raised on appeal, *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660

---

[1] We also note that defendant argues that this Court should also consider the prosecutor's charging decision as a form of evidence admitted at trial, or as grounds for finding that defendant's Sixth Amendment right to a fair trial was violated. However, considering our analysis, *supra*, we are confident that the issue of the prosecutor's alleged over-charging of defendant was properly considered pursuant to the standard this Court announced in *Barksdale*, 219 Mich App at 488.

(2009), and it is not up to this Court to rationalize the basis for a defendant's claims or elaborate his arguments for him. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998).

Next, defendant alleges that the prosecution committed misconduct by misconstruing the record during closing arguments. We disagree.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). When considering allegations of prosecutorial misconduct, this Court must "examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "Although a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence" during closing arguments, the prosecutor "is free to argue the evidence and all reasonable inferences arising from it as they relate to the prosecution's theory of the case[.]" *People v Schumacher*, 276 Mich App 165, 178-179; 740 NW2d 534 (2007) (internal citations omitted). In light of that, prosecutors are generally "accorded great latitude regarding their arguments . . . ." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (internal quotation omitted).

Defendant first asserts that the prosecutor erred by stating that Vivian downplayed the events that occurred on November 14, 2014. While defendant is correct that Vivian testified that she was not "scared" of defendant on the night in question, she also testified at one point that she was "afraid" because defendant had a gun and she did not know his state of mind. And, it was within the prosecutor's power to infer from the evidence that she was downplaying the events, *Bahoda*, 448 Mich at 282, especially considering the testimony regarding Varee's panic, fear, and pleading for her life – which Vivian, Varee, and defendant all testified actually happened. See *id*. In other words, the prosecutor was using inferences from the evidence to prompt the jury to question why Varee would be pleading for her life if defendant and Vivian were entirely calm and there was no indication that defendant intended to hurt or kill anyone. Reviewing the prosecutor's statement in context with the entire record reveals that the prosecutor was not mischaracterizing Vivian's testimony, but properly providing the jury with the prosecution's reasonable inferences that Vivian was trying to downplay the events that occurred that night. *Dobek*, 274 Mich App at 64.

Defendant next argues that the prosecution mischaracterized testimony by stating during closing arguments that defendant had the intention of killing Vivian both in the bedroom and in the garage, when both Vivian and defendant testified to the contrary. Once again, the prosecutor, during closing arguments, is permitted to make arguments based on reasonable inferences taken from the evidence in the case. *Id*. Here, despite the testimony from Vivian and defendant, the prosecutor was inferring from Varee's and the responding officer's testimony that defendant assaulted Vivian with the intent to murder her. Because those inferences were reasonable given the evidence, and the prosecutor used those inferences to support her theory of the case, this did not amount to prosecutorial misconduct. See *Bahoda*, 448 Mich at 282.

Finally, defendant argues that the prosecutor committed misconduct by misstating defendant's testimony regarding how the gun was fired in the bedroom, and whether he intended to kill Vivian during the confrontation in the garage. The prosecutor made the following statements:

They are arguing. [Defendant] claims he went to grab his gun and somehow his finger moved from the gun to the trigger and he accidentally shot at his wife in her direction.

* * *

Did he intend to kill her when he's pointing the gun at her head in the garage. If he intended to kill her, he would have done it. Well, maybe he would have done it. But at that point, he had an officer come in and start screaming at him. Would he have killed her? No one knows. He probably doesn't even know. But, was the intent there at the time he was pointing the gun at her, at [the] time he was shooting a gun in her direction in my opinion, in the opinion in what the evidence shows, at her.

Defendant argues that this mischaracterizes his testimony because he testified that Varee had lunged at him while he was carrying the gun, and then when he tried to move the gun away from her, the gun fired. Further, defendant also testified that he did not intend to shoot or kill Vivian at any time during the events of that night, so, defendant argues, the prosecutor misled the jury by stating that defendant "probably doesn't even know" if he intended to kill Vivian.

It is clear, however, that the prosecutor was merely engaged in the permitted process of making inferences based on the facts presented to argue his version of the case. See *Bahoda*, 448 Mich at 282. Defendant is correct that his testimony was that Varee lunged at him, causing him to jerk away from her, which led to the gun firing. However, the prosecutor's statement during closing argument did not explicitly contradict that testimony. Even if Varee had lunged at defendant while he was carrying the gun, in order for the gun to be fired, defendant's reaction to the lunge would have required defendant's finger to move to the trigger and then pull. The prosecution, therefore, was merely using defendant's testimony to infer that defendant might not have been truthful with describing how the gun was fired, which the prosecutor was permitted to do. *Dobek*, 274 Mich App at 64. With regard to the prosecutor's statement that defendant did not know if he would have killed Vivian, the prosecutor was merely referencing that defendant's memory of his intent during trial testimony could very well have differed from defendant's intent when he was in the heat of the moment in the garage. In other words, the prosecution was using the provided evidence to infer that, despite defendant's testimony to the contrary, it was possible that defendant's mindset at the time of the altercation in the garage was that he was going to kill Vivian. Once again, that is a reasonable inference made from the evidence, and so did not amount to prosecutorial misconduct. See *id*.

In defendant's last argument on appeal, he argues that there was cumulative error requiring reversal. "[T]he cumulative effect of a number of minor errors may in some cases amount to error requiring reversal." *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999). However, "[a]bsent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106. As has been discussed *supra*, the prosecutor did not commit any errors in the present case. Therefore, because there was no "establishment of error" there are no grounds provided for this Court to find that the "cumulative effect of errors" required reversal. *Id*.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause