**Robert D. CHIAFOS, Appellant,**

v.

**MUNICIPAL FIRE & POLICE RETIREMENT SYSTEM OF IOWA, Appellee.**

No. 97–660.

Supreme Court of Iowa.

March 24, 1999.

---

Charles E. Gribble and Patricia M. Hulting of Roehrick, Hulting, Blumberg, Kirlin & Krull, P.C., Des Moines, for appellant.

Alice E. Helle and Douglas E. Gross of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and CADY, JJ.

HARRIS, Justice.

A former police officer believes he is entitled to accidental disability benefits, not merely to the lesser ordinary disability benefits. The administrative agency, the municipal fire and police retirement system of Iowa, rejected his claim and the district court affirmed the rejection. We also affirm, and vacate a contrary determination by the court of appeals.

Robert Chiafos was a police officer for Marion, Iowa, from December 1968 to March 1995. He applied for accidental disability benefits under Iowa Code section 411.6(5) (1997).[1] Accidental benefits are greater than

---

**1.** 5. Accidental disability benefit.
  a. Upon application to the system, of a member in service or of the chief of the police

ordinary benefits provided under Iowa Code section 411.6(3).[2] *See City of Cedar Rapids v. Board of Trustees of Mun. Fire & Police Retirement Sys. of Iowa,* 572 N.W.2d 919, 922 (Iowa 1998). The board for the retirement system rejected the application after determining Chiafos failed to prove that his disability was caused by performance of his police duties at a definite time and place. The district court, reviewing the matter on Chiafos' petition for certiorari, affirmed the board. The matter is before us on further review from a court of appeals decision reversing the district court. The court of appeals found the board had set an incorrect standard for determining causation. Because we think the board applied the correct standard we vacate the court of appeals decision and affirm the district court.

■■■ I. Iowa Code chapter 411 (1997) provides no appeal procedure, so a certiorari action is the appropriate vehicle for challenging the actions of a pension board. *Moon v. Board of Trustees of Mun. Fire & Police Retirement Sys. of Iowa,* 548 N.W.2d 565, 567 (Iowa 1996). For the writ of certiorari to be sustained, the plaintiff must show that the board acted "illegally" in that it failed to act in accordance with a statute or that its decision was not supported by substantial evidence. *Id.* Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings. *City of Cedar Rapids v. Municipal Fire & Police Retirement Sys. of Iowa,* 526 N.W.2d 284, 287 (Iowa 1995) (quoting *Norland v. Iowa Dep't of Job Serv.,* 412 N.W.2d 904, 913 (Iowa 1987)). Evidence is still substantial even though it would have supported contrary inferences. *Id.*

■■■ II. We have said: "[a]ccording to section 411.6(5), three basic issues are usually present in an accidental disability claim: (1) permanent incapacity; (2) causation by a work duty; and (3) 'injury' or 'disease.'" *City of Cedar Rapids,* 572 N.W.2d at 922. Without question Chiafos suffers a permanent incapacity. The question is whether the record supports the board's finding that he failed to establish the second (causation) or third (injury) conditions. We can pass the third issue because the record clearly supports the finding Chiafos failed to establish that his disability resulted from an injury at a definite time and place.

Chiafos listed seven significant physical traumas he experienced during his employment as a police officer:

1. On December 21, 1972, Chiafos fell backwards onto a frozen snow bank with a two-hundred-pound man on top of him.

2. In 1974, Chiafos suffered a severe leg injury and an upper back injury as the result of a foot pursuit.

3. In 1973 or 1974, Chiafos was hit in the shoulders by a heavy object while trying to break up a bar room brawl.

4. In 1973 or 1974, Chiafos was put into a headlock by a suspect involved in a high-speed pursuit.

5. On November 14, 1975, Chiafos was assaulted by a woman who hit him very hard on the right rear of his head. During this incident Chiafos' wedding ring was knocked off by the force used.

6. On January 18, 1976, Chiafos was punched in the face with closed fists by a

---

or fire departments, respectively, any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty *at some definite time and place,* or while acting pursuant to order, outside of the city by which the member is regularly employed, shall be retired by the system, if the medical board certifies that the member is mentally or physically incapacitated for further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired. . . . (Emphasis added.)

**2.** 3. Ordinary disability retirement benefit. Upon application to the system, of a member in service or of the chief of the police or fire departments, respectively, any member shall be retired by the system, not less than thirty and not more than ninety days next following the date of filing the application, on an ordinary disability retirement allowance, if the medical board after a medical examination of the member certifies that the member is mentally or physically incapacitated for further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired. . . .

suspect and suffered a black eye, split lip, and fractured sinuses.

7. In May 1985, while attending the FBI Academy in Quantico, Virginia, as a part of his job training, Chiafos was hit at the base of his skull by an elbow and, though he didn't recollect any pain or discomfort, he remembered the distinct sound of his vertebrae cracking.

(In March 1995, Chiafos had surgery to repair a herniated disk. After the surgery, his doctor would not release him to full-time employment as a police officer because he was susceptible to future neck injury.)

The seven listed incidents, not unusual in the often violent experience of police officers, undoubtedly caused serious wear and tear on Chiafos' body. But the statute requires something more in order to qualify for the higher disability benefits that can be traced to a duty injury at some definite time and place. That something more is not satisfied by merely pointing to a series of injuries that heal before the next injury occurs. To qualify for accidental disability benefits, the applicant must prove the injury is the result of a specific work-related accident or incident. *Branson v. Municipal Fire & Police Retirement Sys. of Iowa*, 591 N.W.2d 193, 194, 1999 WL 160019 (Iowa 1999).

Chiafos himself admitted his various injuries "almost always would improve." It is even more significant that Chiafos' key witness conceded his inability to conclude Chiafos' injuries occurred at some definite time and place. The district court's ruling summarized the testimony this way:

> In support of his claim Chiafos also offered the deposition testimony of his neurosurgeon Dr. Loren J. Mouw. Dr. Mouw was questioned at length about the potential causes of Chiafos' neck problems, but he was unable to point to any specific injury which caused Chiafos' condition. He testified that Chiafos' spine "showed evidence of multiple injuries over time and also had an acute episode with the disk herniation," and that it was "not a typical looking spine, it's one that's shown years of, you know, culmination of abuse or misuse." He also stated that given the events

recounted by Chiafos, it "would not surprise" him that Chiafos later developed degenerative disk disease of the neck. As for the final incident testified to by Chiafos, the incident where he was struck by an errant elbow during a volleyball game, Dr. Mouw testified that the impact "[c]onceivably could" have been a significant cause of the neck injury, but he stopped short of supporting that incident as a "cause" of the injury. He did state, however, that "it's just the history of repetitive episodes in which he had documented spine pain or neck pain [that] I think is probably the key."

III. We considered a closely analogous accidental disability claim in *City of Cedar Rapids v. Municipal Fire & Police Retirement System of Iowa*, 526 N.W.2d 284 (Iowa 1995). The firefighter in that case also became incapacitated as a result of a degenerative condition of the back and neck. Finding substantial evidence to support it, we affirmed an award of accidental disability benefits. *City of Cedar Rapids*, 526 N.W.2d at 293–94.

Our opinion in the *City of Cedar Rapids* case is instructional in the present appeal because of the two crucial ways in which the facts there differ from those here. First and most obviously, the firefighter in that case won his point with the retirement board and was awarded accidental disability benefits whereas Chiafos lost with the board. In finding substantial evidence supported the award to the Cedar Rapids firefighter, we in no way intimated that the same evidence would not have supported a contrary administrative finding.

The second crucial difference between the *City of Cedar Rapids* case and the present one lies in Dr. Mouw's inability to pinpoint one injury at a definite time and place that caused Chiafos' condition. In *City of Cedar Rapids* we found that, although there was a series of back injuries, there was "at least one defined acute injury that was most noticeable." *Id.* at 289. The doctor in that case testified there was a "well-defined insult in 1984 from which he has not fully recovered in spite of adequate surgical consultation and medical evaluation and treatment." *Id.* We

determined from this testimony and other evidence in the case that the degenerative disc condition arose from a chain of events in natural progression from the 1984 back injury. *Id.* at 290.

IV. We are obliged to renounce the standard for determining causation suggested by the court of appeals in the opinion we now vacate. On the basis of its holding in *Bushman v. Cuckler Building Systems, a Division of Lear Siegler, Inc.,* 421 N.W.2d 145, 148 (Iowa App.1988), the court of appeals held that Chiafos could establish causation in the present case by expert testimony that his injury was "possibly" work related, coupled with other evidence that the condition did not previously exist. The court of appeals would have remanded to have Chiafos' claim reconsidered on such a standard. We note that our rejection of the *Bushman* standard of causation is limited to claims brought under Iowa Code section 411.6(5). For the reasons we have explained, we think the rejection of accidental disability benefits must be affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**