# IN THE COURT OF APPEALS OF IOWA

No. 23-1504
Filed November 13, 2024

**BROOKE CARTER,**
        Plaintiff-Appellant,

**vs.**

**MUNICIPAL FIRE AND POLICE RETIREMENT SYSTEM OF IOWA,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister, Judge.

        A former police sergeant appeals a district court ruling on certiorari affirming a board's finding that she is not entitled to accidental disability benefits for a mental injury.  **AFFIRMED.**

        Charles Gribble and Christopher Stewart of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

        Cynthia Boyle Lande and Jennifer L. Lindberg of Brown, Winick, Graves, Gross and Baskerville, P.L.C., Des Moines, for appellee.

        Heard by Schumacher, P.J., Badding, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BADDING, Judge.**

Former police sergeant Brooke Carter sought accidental disability benefits under Iowa Code chapter 411 (2022) for a mental injury she suffered after watching a suspect's vehicle intentionally ram into another officer's squad car. The Municipal Fire and Police Retirement System denied her claim for accidental disability benefits and awarded her ordinary disability benefits instead. Carter sought certiorari review from the district court, asserting the board of trustees for the system acted illegally in denying her claim for accidental benefits because the board applied the wrong legal causation standard, and its decision was not supported by substantial evidence. The court denied Carter's claims and annulled the writ of certiorari.

Carter appeals, raising the same two claims as she did before the district court—the first of which is an issue of first impression: whether the legal causation standard recently set out in *Tripp v. Scott Emergency Communications Center*, 977 N.W.2d 459 (Iowa 2022) for workers' compensation benefits based on mental injuries applies to accidental disability benefits for police officers under chapter 411. We conclude the court in *Tripp* did not overrule the occupation-specific, greater-magnitude standard under chapter 411 from a pair of cases the parties refer to as *Cornish-Moon*. *See City of Cedar Rapids v. Mun. Fire & Police Ret. Sys.* (*Cornish*), 572 N.W.2d 919, 922 (Iowa 1998); *Moon v. Mun. Fire & Police Ret. Sys.* (*Moon*), 548 N.W.2d 565, 568 (Iowa 1998). Using that standard, we agree with the district court that the board's decision denying Carter accidental disability benefits was supported by substantial evidence. We accordingly affirm the court's judgment annulling Carter's writ of certiorari.

## I.     Background Facts and Proceedings

Brooke Carter worked as a police officer for the City of Waterloo for more than thirty years, starting in 1990 when she was just twenty years old. In 2001, Carter was promoted to sergeant and became a shift supervisor on patrol. During one of her shifts in December 2014, Carter and two other officers—Ben Bloker and Randall Hammitt—were dispatched to a disorderly conduct call involving Kelvin Plain Jr. Dispatch notified the officers that Plain was outside the reporting party's residence making threats and cautioned that he was "dangerous, carries weapons." Carter was familiar with Plain and knew he did "not like law enforcement officers whatsoever," had a "volatile temper," and "usually had a weapon with him."

Bloker arrived on the scene first. A video from his squad car captured the officers' interaction with Plain, who was sitting in a vehicle parked in the driveway. Bloker described Plain as "highly agitated and very upset." After talking to Plain and the reporting party, Bloker told Plain that he needed to leave. Plain was still very upset, according to Bloker, but drove away. As Plain was leaving, Hammitt pulled up in his squad car, with Carter not far behind. Bloker filled them in on what happened, and Carter decided to turn her car around at the dead-end street, intending to "stay there until [the] officers had cleared the scene." Hammitt was still in his car, facing her. Meanwhile, Plain called the reporting party, who was standing outside with Bloker. She answered on speaker phone, and Plain can be heard on the video, ranting at her.

With her car turned around and facing the street, Carter saw Plain's vehicle come speeding back towards them, accelerating the whole time. She didn't have

time to do anything except honk her horn to warn the other two officers. Bloker heard the horn and drew his weapon, but he could not stop Plain before he rammed into the back of Hammitt's squad car. The impact pushed Hammitt's car into a parked car and then into Carter's squad car, before slamming into a tree.

Because of how fast Plain was going when he hit Hammitt's car—at least fifty-seven miles per hour—both Carter and Bloker thought Hammitt died in the crash. They drew their weapons and cautiously approached Plain's vehicle, "fully expect[ing] him to start shooting us." But they managed to get Plain on the ground and arrest him. As Carter and Bloker were handcuffing Plain, Hammitt climbed out the passenger side of his squad car and ran over to assist them. None of the officers suffered serious physical injuries from the incident.

But the traumatic incident continued to affect Carter mentally, with feelings of extreme guilt, shame, and failure. She tried to cover up those feelings by drinking alcohol, explaining the "worse the feelings got, the more I drank." Although this continued for years, Carter kept working as a police officer until August 2021, when she sought substance-use treatment.

Carter completed an inpatient treatment program, following which she sought counseling. She was diagnosed with post-traumatic stress disorder, substance use disorder, and anxiety, which her treatment providers linked to the incident with Plain in December 2014. Carter did not return to the police department after finishing treatment, instead applying for accidental disability benefits in November 2021. The system's executive director notified Carter in April 2022 that while she "qualified for an ordinary disability pension instead," she was not entitled to accidental disability benefits because the "evidence does not

establish [her] incapacity was caused by an incident which was unusually stressful for police officer work." Carter appealed that decision to a three-person disability appeals committee from the system's board of trustees. At the hearing on her appeal, the City waived its right to present evidence or question Carter's witnesses, who included Carter, Bloker, Hammitt, and another officer.

Following the hearing, the committee denied Carter's appeal for accidental disability benefits but affirmed her award of ordinary disability benefits. The committee first determined that Carter had to establish the legal causation component of her claim under the *Cornish-Moon* standard, which provides that "an accidental disability pension is payable under Iowa Code [chapter] 411 for a mental injury only if the injury was caused by workplace stress of greater magnitude than the day-to-day stresses experience by other police officers." *See Cornish*, 572 N.W.2d at 922; *Moon*, 548 N.W.2d at 568. The committee found that because Carter and other "officers often face dangerous suspects and entered this situation aware that the suspect was likely armed," the incident "was not above and beyond the day to day stress experienced by other police officers." The committee alternatively found that if, as Carter urged, the supreme court meant to

> replace the legal causation standard it adopted in *Moon* and *Cornish* with the standard it recently announced in the workers' compensation context in *Tripp*, Applicant's mental injury still does not meet that standard. For the *Tripp* standard to apply, there must be a readily identifiable event, which is sudden, traumatic, and unexpected or unusual. The Incident was not sudden, unexpected, or unusual.

The committee's decision was ratified by the full board.

Carter then petitioned for a writ of certiorari from the district court, claiming the board acted illegally by applying the wrong legal causation standard and

issuing a decision that was not supported by substantial evidence. In a thorough and well-reasoned decision, the court annulled the writ. On Carter's first claim, the court found that "[u]ntil the Iowa Supreme Court says otherwise, the *Cornish-Moon* test remains the legal causation test in Iowa for a chapter 411 disability action." As for her second claim, the court concluded "that substantial evidence supports the [board's] decision to deny the award of accidental disability retirement benefits under both the *Cornish-Moon* legal causation standard that is the current law and the *Tripp* legal causation standard that Carter urges the Court to apply."

## II.    Standard of Review

Because Iowa Code chapter 411 lacks any appeal procedure, Carter properly challenged the board's decision through her certiorari action. *See Cornish*, 572 N.W.2d at 921. We review a district court's ruling in a certiorari action for correction of errors at law. *See Carstensen v. Bd. of Trs. of Police Ret. Sys.*, 253 N.W.2d 560, 561 (Iowa 1977).

> Certiorari actions are proper when an inferior board, exercising judicial functions, acts illegally. An inferior board acts illegally if it has not acted in accordance with a statute or if its decision was not supported by substantial evidence. Evidence is substantial "when a reasonable mind could accept it as adequate to reach the same findings." Evidence is still substantial even though it would have supported contrary inferences.

*Cornish*, 572 N.W.2d at 921 (citation omitted).

## III.    Analysis

### A.    Legal Standard

Claims for accidental disability benefits under Iowa Code section 411.6(5) are reviewed for "(1) permanent incapacity; (2) causation by a work duty; and (3) 'injury' or 'disease.'" *Id*. at 922. The parties do not dispute that Carter's

disability is an injury resulting in permanent incapacity. But Carter must also prove medical and legal causation. *See id.* (noting that in "workers' compensation cases, factual causation means medical causation: the employee's injury must be causally connected to the employee's employment"). Only legal causation is at issue here. *See id.* (explaining that "[l]egal causation is a policy question: How far will the law extend responsibility to those consequences which have in fact been produced?").

Legal causation for mental injuries under section 411.6(5) is determined by the *Cornish-Moon* standard referred to above: "the claimant must show that the mental injury was caused (1) in fact by mental stimuli in the work environment, and (2) by workplace stress 'of greater magnitude than the day-to-day mental stresses experienced by other workers employed in the same or similar jobs, regardless of their employer.'" *Moon*, 548 N.W.2d at 568 (citation omitted). The court in *Moon* adopted this standard from *Dunlavey v. Economy Fire and Casualty Co.*, 526 N.W.2d 845 (Iowa 1995), a workers' compensation case under Iowa Code chapter 85, concluding that "the rationale of *Dunlavey* would be equally pertinent in a disability case under chapter 411." In reaching this conclusion, the court noted that "'[h]istory shows a legislative intent . . . to treat persons entitled to chapter 411 benefits and workers' compensation benefits alike' and 'the systems [chapters 411 and 85] are not identical but it is apparent they serve the same purposes.'" *Id.* (second and third alterations in original) (quoting *Goebel v. City of Cedar Rapids*, 267 N.W.2d 388, 391 (Iowa 1978)).

Because the *Cornish-Moon* standard came from the workers' compensation realm, Carter asserts the supreme court's decision in *Tripp*—which revamped the

legal causation standard under chapter 85 for mental injuries "traceable to a readily identifiable work event," 977 N.W.2d at 470—also applies to accidental disability benefits under chapter 411. We disagree.

The issue before the court in *Tripp* was "whether Iowa's workers' compensation statute places on emergency responders a different, higher bar to be eligible for benefits for trauma-induced mental injuries suffered on the job than workers in other roles with identical injuries."[1] 977 N.W.2d at 460. In concluding it did not, the court explained:

> Focusing on the employee's own job in determining an "unexpected strain" places workers routinely tasked with addressing traumatic incidents, such as emergency dispatchers, paramedics, police officers, and firefighters, in a *disfavored* position as compared with other workers. They would bear a burden to prove *hyper*-unexpected causes and *hyper*-unusual strains—some extraordinary species of traumatic event, above and beyond the perilous events that they regularly confront—to qualify for benefits that those in less hazardous professions receive by meeting a far lower bar.

*Id.* at 466. Since nothing in the workers' compensation statute required that result, the court concluded that "[f]or mental injuries 'based on a manifest happening of a sudden traumatic nature from an unexpected cause or unusual strain' legal causation is established without regard to the regular duties of the particular employee or other employees in similar positions." *Id.* at 467 (citing *Brown v. Quik Trip Corp.*, 641 N.W.2d 725, 728–29 (Iowa 2002)).

Carter argues that because the "*Tripp* Court specifically referenced police officers in holding that there is nothing that requires police officers to meet a higher burden," its standard must also apply to chapter 411 accidental disability benefits

---

[1] The emergency responder in *Tripp* was a 911 dispatcher who answered a call from the mother of a dead infant. 977 N.W.2d at 461.

for police officers. In further support of this argument, she notes the court in *Tripp* stated the *Cornish-Moon* cases "offer[ed] little of substance" to its analysis. *Id.* at 468. But, as *Tripp* explained, "the words of the workers' compensation statute" were the polestar for its analysis. *Id.* at 467. And the court was careful to limit its holding to workers' compensation benefits: "Our workers' compensation statute doesn't impose a higher burden on workers with jobs that involve frequent brushes with traumatic events than workers in other occupations. Workers' compensation, it bears repeating, is a statutory creation, with eligibility for benefits determined by what *the statute* provides." *Id.* at 470.

For these reasons, we agree with the district court that while *Tripp* may have "call[ed] into question the continuing viability of the *Cornish-Moon* legal causation test going forward, at least for now, that legal standard remains the governing law in a chapter 411 disability case in Iowa."[2] *See id.* at 482 (Waterman, J., dissenting) (stating the "majority effectively overrules *Moon*, where we had

---

[2] We note that effective July 1, 2024, section 411.6(5) was amended to add a new paragraph:

> To establish that a mental incapacity occurred as the natural and proximate result of an injury or disease incurred in or aggravated by the actual performance of duty or arising out of and in the course of the employment, or while acting, pursuant to order, outside of the city by which the member is regularly employed, the member must demonstrate that the mental incapacity is traceable to a readily identifiable work event constituting a manifest happening of a sudden traumatic nature from an unexpected cause or unusual strain in the workplace. Whether an incident is traumatic, unexpected, or unusual is determined by comparing the incident, and not the effect on the member, to the experiences of other police officers or fire fighters in Iowa. A member must be able to trace their mental injury to a specific event or events in the workplace to be eligible for accidental disability benefits.

Iowa Code § 411.6(5)(0d) (Supp. 2024).

confirmed that the compensability of a first responder's mental injury triggered by one or two specific incidents is determined under *Dunlavey* by reference to the claimant's occupation as a police officer"). Because the court in *Tripp* did not expressly overrule the *Cornish-Moon* legal causation standard for accidental disability benefits under chapter 411 for mental injuries, we conclude the board did not act illegally in applying that standard to Carter's claim. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

## B. Substantial Evidence

This brings us to the determinative question on appeal—whether the board's decision denying Carter accidental disability benefits under the *Cornish-Moon* standard was supported by substantial evidence?[3] We find no error of law in the district court's conclusion that it was.

In denying Carter's claim, the board considered a non-exclusive five-factor test to determine whether the incident involved "workplace stress 'of greater magnitude than the day-to-day mental stresses experienced by other workers employed in the same or similar jobs, regardless of their employer.'" *Moon*, 548 N.W.2d at 568 (citation omitted). Those factors included:

> (1) whether the incident(s) is something for which the member received training; (2) whether, with respect to the incident(s), the member's department or supervisor followed or deviated from standard protocols in the profession; (3) the member's degree of familiarity with a victim prior to the incident; (4) the culpability or

---

[3] Although the board also applied the *Tripp* standard in denying Carter's claim for accidental disability benefits, we need not address Carter's argument that its decision under that standard was not supported by substantial evidence since we have concluded that the board correctly applied the *Cornish-Moon* standard.

innocence of the victim(s); and (5) whether the incident occurred in close proximity to other more stressful incidents.

Under those factors, the board found:

> There was no testimony that Applicant's department or supervisors failed to follow standard protocols in connection with the Incident. While no evidence was presented as to whether Applicant had received training for situations similar to the Incident, Applicant testified that it was common for her to assist with difficult situations, and she and the other officers were aware the suspect had a history of carrying weapons and assaulting officers when they arrived at the call on December 14. The Incident involved a potential for severe injury to an individual who was a colleague and friend to Applicant. . . . The Committee recognizes that fact. However, in light of the fact that Applicant and officers often face dangerous suspects and entered this situation aware that the suspect was likely armed, the Committee assesses that the Incident was not above and beyond the day to day stress experienced by other police officers.

Carter challenges these findings with other evidence in the record, including that "each of the seasoned officers involved testified they had never been involved in a similar incident so traumatic" and that while the officers may have been prepared for a physical confrontation with Plain, they were not prepared for what actually occurred—"an attack by vehicle . . . with the intent to kill or injure one of the police officers." *See Cornish*, 572 N.W.2d at 925 ("[T]he more extraordinary the incident the greater the stress").

While this evidence could support a finding that the stress of the incident went beyond the day-to-day stress of other police officers, our review is narrow. *See Kirkman v. Disability Appeals Comm., Mun. Fire and Police Ret. Sys of Iowa*, No. 01-1963, 2002 WL 31757508, at *3 (Iowa Ct. App. Dec. 11, 2002) (affirming the board's denial of accidental disability benefits despite conflicting evidence about the unusually traumatic nature of the incident); *accord Cornish*, 572 N.W.2d at 925–26; *Moon*, 548 N.W.2d at 569–70. As the court in *Cornish* explained,

> Evidence is not insubstantial merely because it would have supported contrary inferences; nor is evidence insubstantial because of a possibility of drawing two inconsistent conclusions from it. In determining whether evidence is substantial to support a decision, the ultimate question is not whether the evidence supports a different finding, but whether the evidence supports the finding actually made.

572 N.W.2d at 926 (internal citation omitted). Because Carter had the burden of proof on her claim, which she failed to meet before the board, she can prevail on appeal only if she "was entitled to such benefits as a matter of law." *Moon*, 548 N.W.2d at 569. We agree with the district court that, given "the sad reality of police work," Carter did not meet this standard for the reasons the board stated. *See, e.g.*, *Chiafos v. Mun. Fire & Police Ret. Sys.*, 591 N.W.2d 199, 202 (Iowa 1999) (stating significant physical traumas are "not unusual in the often violent experience of police officers"). Buttressing the board's decision is evidence that the officers knew Plain disliked law enforcement; Plain was still "very upset" when he drove away, only to call back minutes later screaming at the reporting party; and the entire event was short—with Hammitt jumping out of his squad car and joining the other officers within sixty seconds after the crash.

Yet Carter urges that we should reach a different result because there was no conflicting evidence in the record about the unexpectedly traumatic nature of the event since the "City was present at the hearing but declined to participate and offered no witness[es] or exhibits." As stated above, however, the question is not whether the evidence is unrebutted but whether the evidence—rebutted or not— "supports the finding actually made." *See Cornish*, 572 N.W.2d at 926. The board, which includes police officers, "is more than qualified to weigh the evidence and determine what are and what are not unusually stressful incidents for police

officers" because "of its members' own work experience." *Id.*; *accord Kirkman*, 2002 WL 31757508, at *3.

For these reasons, we conclude the district court correctly determined that substantial evidence supported the board's denial of accidental disability benefits for Carter's mental injury.

**AFFIRMED.**