*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LEE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
April 27, 2023

No. 361607
Wayne Circuit Court
LC No. 17-001666-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

CHRISTOPHER LEE JOHNSON,

        Defendant-Appellee.

No. 361858
Wayne Circuit Court
LC No. 17-001666-01-FC

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 361607, defendant appeals by leave granted[1] his guilty plea conviction of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(c) (sexual penetration under circumstances involving commission of a felony), (e) (defendant armed with a weapon), and (f) (defendant caused personal injury and used force or coercion). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 13 to 30 years' imprisonment and lifetime registration pursuant to the Sex Offenders Registration Act ("SORA"), MCL 28.721 *et seq.*, for his CSC-I conviction. The trial court's amended judgment of sentence

---

[1] *People v Johnson*, unpublished order of the Court of Appeals, entered July 14, 2022 (Docket No. 361607).

-1-

eliminated the lifetime SORA registration requirement because the trial court ruled the requirement was unconstitutional, as applied to defendant, under *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021). In Docket No. 361858, the prosecution appeals by right the trial court's order granting defendant's motion for an amended judgment of sentence to remove the requirement that defendant register pursuant to SORA. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 26, 1995, the victim in this case was raped at gun point. The victim was taken to a hospital and a rape kit was performed. In 2017, defendant was charged with CSC-I after his DNA was matched to the DNA collected from the victim's rape kit.

Defendant's trial was originally scheduled to begin on May 11, 2017. At a pretrial hearing, defendant was brought to court because defendant was displaying extreme psychological issues. Defense counsel told the trial court that defendant was so incoherent that he was unable to communicate with defendant. The trial court ordered that the prosecution arrange competency and criminal responsibility evaluations and concurrent independent evaluations be performed. After the evaluations were completed, the trial court found defendant competent to stand trial and rescheduled defendant's trial to begin on February 20, 2018.[2]

In December 2017, the parties were negotiating a plea agreement, and defense counsel and the prosecution agreed that defendant's minimum sentence guidelines range would be 15 to 30 years' imprisonment if defendant were convicted of CSC-I in this case. The parties were discussing a plea agreement where defendant would be sentenced to a term of 13 to 30 years' imprisonment in exchange for pleading guilty. The trial court stated at a hearing that, if it made a *Cobbs*[3] evaluation in this case, it could not "conceive" of sentencing defendant to a term of imprisonment that was below the minimum sentence guidelines range if defendant were convicted of CSC-I at trial. On January 2, 2018, defendant accepted the prosecution's plea agreement offer and pled guilty to CSC-I. Under the terms of the agreement, in exchange for his plea , defendant would receive a sentence of 13 to 30 years' imprisonment as a second-offense habitual offender and be required, for life, to register pursuant to SORA. Defendant was sentenced on January 16, 2018. At the sentencing hearing, the prosecution requested, and defense counsel stipulated to, two changes to the guidelines scoring. Defendant declined to speak at the hearing, and the trial court sentenced defendant consistently with the plea agreement.

On December 26, 2018, defendant moved in the trial court to withdraw his guilty plea, for resentencing, or for the trial court to hold a *Ginther*[4] hearing on the basis that his plea was not knowingly and voluntarily entered because defendant received ineffective assistance of counsel. Defendant also argued that his plea was not knowing and voluntary because offense variables (OVs) were incorrectly scored, without identifying which OVs he disputed. There were no

---

[2] From the record, it does not appear that the court resolved the issue whether defendant could be held criminally responsible.

[3] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

proceedings on defendant's original motion to withdraw his guilty plea until after defendant filed a "supplemental" motion to withdraw his guilty plea on February 22, 2022. In the new motion, defendant again sought to withdraw his plea, be resentenced, or be granted a *Ginther* hearing. Defendant argued that his trial counsel was ineffective and his plea was not knowing and voluntary because defendant did not know that lifetime SORA registration under the Legislature's 2011 amendments to SORA, 2011 PA 17 and 2011 PA 18, violated defendant's right to be free from ex post facto laws. Defendant also argued that he is entitled to resentencing because the sentencing information report from his original sentencing is missing from the lower court record, and that prevents defendant from challenging the accuracy of the guidelines scores in the trial court or on appeal. In response, the prosecution argued that defendant received effective assistance of counsel and waived his rights to withdraw his plea and to be resentenced. The prosecution also argued that defendant is still subject to SORA because any considerations of ex post facto laws do not obviate defendant's duty to register under the 2021 amendments to SORA, which cured the constitutional ex post facto law defects of the 2011 version of SORA.

The trial court denied defendant's motion to withdraw his guilty plea because the record from defendant's plea hearing and sentencing hearing showed defendant expressed that he understood the rights he was giving up and that he was satisfied with his counsel's representation. The trial court denied defendant's motion for a *Ginther* hearing because there was no indication from the record that defendant's trial counsel made any mistakes. The trial court also denied defendant's motion for resentencing regarding the missing sentencing information report because defendant entered his guilty plea knowingly, voluntarily, and understandingly received effective assistance of counsel. However, the trial court granted defendant's motion for an amended judgment of sentence to remove the requirement that he register under SORA for life because application of the current SORA to defendant constituted an unconstitutional violation of defendant's right to be free from an ex post facto law. On May 17, 2022, the trial court entered an amended judgment of sentence that removed from defendant's sentence the requirement that he register under SORA, but did not amend defendant's term of imprisonment.

On May 31, 2022, in Docket No. 361607, defendant filed an application for leave to appeal his amended judgment of sentence in this Court arguing he should be allowed to withdraw his plea on the basis of ineffective assistance of counsel and that he is entitled to resentencing because the sentencing information report from defendant's original sentencing is missing. On June 21, 2022, in Docket No. 361858, the prosecution appealed as of right the trial court's order removing the lifetime SORA registration requirement from defendant's judgment of sentence.[5] This Court

---

[5] On June 30, 2022, defendant moved in this Court to dismiss the prosecution's appeal in Docket No. 361858, arguing that this Court lacks jurisdiction to hear the prosecution's appeal because the trial court's order rescinding the requirement that defendant register pursuant to the SORA was not a final order. On August 5, 2022, this Court denied defendant's motion to dismiss the prosecution's appeal in Docket No. 361858. *People v Johnson*, unpublished order of the Court of Appeal, entered August 5, 2022 (Docket No. 361858).

granted defendant's application for leave to appeal in Docket No. 361607 and entered an order consolidating these appeals pursuant to MCR 7.211(E)(2)(a).[6]

## II. STANDARDS OF REVIEW

This Court reviews for an abuse of discretion a sentence imposed under the judicial sentencing guidelines, applying the principle of proportionality. *People v Babcock*, 469 Mich 247, 253-254; 666 NW2d 231 (2003). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourne*, 435 Mich 630, 636; 461 NW2d 1 (1990).

This Court reviews for an abuse of discretion a trial court's decision on a motion to withdraw a plea. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, and questions of law are reviewed de novo. *Id.* When there was no *Ginther* hearing requested or held in the trial court, review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW 2d 342 (2005). A trial court's decision on a motion to amend a judgment of sentence is a question of law that is reviewed de novo. *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

## III. DOCKET NO. 361607

### A. RESENTENCING

Defendant argues that he is entitled to resentencing because the sentencing information report prepared at his original sentencing hearing is missing from the lower court record. We disagree.

Because defendant committed the crime in this case in 1995, before the legislative sentencing guidelines took effect, defendant must be sentenced under the judicial sentencing guidelines that were in effect when the crime was committed. *People v Reynolds*, 240 Mich App 250, 254; 611 NW2d 316 (2000). When sentencing a defendant who is an habitual offender under the judicial sentencing guidelines, the trial court is required to prepare a sentencing information report. *People v Zinn*, 217 Mich App 340, 350; 551 NW2d 704 (1996). However, the judicial sentencing guidelines do not apply to habitual offenders. *Id.* Originally, the purpose of requiring a sentencing court to prepare a sentencing information report for habitual offenders, was to aid the judiciary in crafting habitual offender judicial sentencing guidelines. *Id.* The purpose of completing a sentencing information report for an habitual offender is not to aid the trial court in determining a proper sentence and "is not for the benefit of the defendant himself . . . ." *People v*

---

[6] *People v Johnson*, unpublished order of the Court of Appeal, entered October 5, 2022 (Docket Nos. 361607 and 361858).

*Yeoman*, 218 Mich App 406, 421; 554 NW2d 577 (1996). When crafting a sentence for a habitual offender whose crime was committed while the judicial sentencing guidelines were in effect, a sentencing court is only to be guided by the principle of proportionality. *Id*. at 419. Further, this Court is prohibited from considering the judicial sentencing guidelines when it reviews an habitual offender's sentence for proportionality, and an habitual offender is not permitted to challenge the trial court's guidelines calculations on appeal. *People v Edgett*, 220 Mich App 686, 694-695; 560 NW2d 360 (1996). Accordingly, an habitual offender does not have a right to have an accurately scored sentencing information report under the judicial sentencing guidelines. *Id*. at 695.

Defendant argues that remand is necessary because he has the right to have an accurate presentence investigation report ("PSIR") on record. This Court has held that remand is required to correct an error in a defendant's PSIR even when the error does not affect the defendant's sentence. *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001). Defendant has not challenged the accuracy of the information contained in his PSIR, which is in the lower court record. Notably, this Court has not held that a trial court must rescore the judicial sentencing guidelines when a sentencing information report for a habitual offender is missing from the defendant's PSIR. To require the trial court in this case to undertake the ministerial task of recreating a sentencing information report would be inconsistent with this Court's holdings that a habitual offender's sentencing information report is not for the defendant's benefit, *Yoeman*, 218 Mich App at 421, and that a habitual offender does not have the right to challenge inaccuracies in a sentencing information report, *Edgett*, 220 Mich App at 695.[7] Therefore, defendant is not entitled to a remand for the completion of a "new" sentencing information report.

Defendant also argues that he is entitled to be resentenced because he has a right to have an accurate sentencing information report to facilitate review of his sentence. Even if the trial court erred when it scored the judicial sentencing guidelines in this case, defendant would not be entitled to review of his sentence. It is well-established that "a defendant who voluntarily and understandingly entered into a plea agreement that included a specific sentence waives appellate review of that sentence." *People v Billings*, 283 Mich App 538, 550; 770 NW2d 893 (2009). Defendant entered into a plea agreement for a specific sentence. And, as will be discussed, defendant voluntarily and understandingly entered into the plea agreement in this case. The Supreme Court has also held that a defendant waives appellate review of an above-guidelines sentence resulting from a plea agreement if the plea agreement was entered into voluntarily and understandingly regarding the minimum sentence. *People v Wiley*, 472 Mich 153, 154; 693 NW2d 800 (2005). Here, defendant was sentenced consistently with the terms of the plea agreement. Therefore, defendant is not entitled to the re-creation of a sentencing information report and has waived any challenge to his sentence.

## B. PLEA WITHDRAWAL

---

[7] In this case, defense counsel, the prosecutors and the trial court all had the sentencing information report at the time of sentencing but cannot be located now.

Defendant argues that the trial court erred when it denied his motion to withdraw his guilty plea or, alternatively, to hold a *Ginther* hearing to determine whether defendant received the effective assistance of counsel. We disagree.

A "defendant has a right to withdraw any plea until the court accepts it on the record." MCR 6.310(A). A trial court "may not accept a plea of guilty or *nolo contendere* unless it is convinced that the plea is understanding, voluntary, and accurate." *People v Cole*, 491 Mich 325, 330-331; 817 NW2d 497 (2012). After the trial court accepts a guilty plea on the record, there is no absolute right for a defendant to withdraw his plea. *Blanton*, 317 Mich App at 117. An accepted guilty plea may be withdrawn "only in the interest of justice . . . ." MCR 6.310(B)(1). A defendant bears the burden of establishing "a fair and just reason for withdrawal of the plea." *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). Plea withdrawal may be allowed when a defendant receives ineffective assistance of counsel that causes a defendant to unknowingly or involuntarily enter a guilty plea. *People v Thew*, 201 Mich App 78, 91; 506 NW2d 547 (1993).

Establishing ineffective assistance of counsel requires a defendant to show his counsel's performance was so deficient that he was denied his Sixth Amendment right to counsel. US Const, Am VI; *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "Effective assistance of counsel is presumed, and [a] defendant bears a heavy burden to prove otherwise." *Id*. In *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018), this Court explained:

> To establish that his or her lawyer provided ineffective assistance, a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different.

An attorney's performance may be ineffective when he or she fails to make a reasonable investigation of the facts in the case. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Ineffective assistance of counsel can also be established when a defendant is induced into accepting a plea agreement on the basis of counsel's inaccurate legal advice. *People v Jackson*, 203 Mich App 607, 613; 513 NW2d 206 (1994). Regarding prejudice, there is a reasonable probability that the result would have been different when the probability is strong enough to undermine confidence in the outcome. *People v Chenault*, 495 Mich 142, 159 n 10; 845 NW2d 731 (2014). When a defendant has accepted a plea agreement, establishing prejudice requires the defendant to show that, but for counsel's error, the outcome of the plea process would have been different. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). A defendant is also required to establish the factual predicate of an ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because no *Ginther* hearing was held in the trial court, our review is limited to mistakes apparent on the record. *Mack*, 265 Mich App at 125.

Defendant first argues that his trial counsel did not perform an adequate investigation and was unprepared to go to trial. Defendant's first attorney, Jermaine Wyrick, moved in the trial court for an independent DNA analysis, that defendant be allowed to take a polygraph examination, and that the trial court appoint an independent investigator for defendant. The trial court granted each of those motions. The independent DNA analysis was completed, and Wyrick indicated that the defense would not be calling the DNA analyst as a witness. Defendant was scheduled for a

polygraph examination on May 2, 2017, and there is no indication that the examination did not happen. The record does not contain what evidence, if any, was uncovered in the independent investigation. Rather than showing a failure to investigate, the record shows that Wyrick pursued many avenues to find exculpatory evidence and that apparently none was found. Defendant has not identified any evidence that may have been uncovered through further investigation. There is no suggestion from the record that counsel failed to investigate possible avenues of defense. Therefore, defendant has failed to establish the factual predicate of his claim. *Hoag*, 460 Mich at 6.

Defendant's assertion in his affidavit that his counsel was unprepared for trial also lacks merit. Defendant's trial was originally scheduled to begin on May 11, 2017. As discussed, Wyrick had performed a full investigation and was engaged in pretrial proceedings. From the record, Wyrick appeared prepared for trial, and even refused to stipulate to the proper chain of custody for the prosecution's DNA evidence. Defendant's trial did not begin on May 11, 2017, because counsel raised the question regarding defendant's competency to stand trial. Defendant's second trial counsel, Sanford Schulman, was appointed on June 6, 2017. After the court found defendant was competent to stand trial on October 12, 2017, defendant's trial was scheduled to begin on February 20, 2018. Defendant pleaded guilty on January 2, 2018, long before trial. Even if defendant's original counsel was unprepared for trial, which does not appear to be the case, the record does not support that defendant's second attorney was unprepared for trial considering that defendant pleaded guilty nearly two months before defendant's trial was scheduled to begin.

The record also does not support that defendant unknowingly or involuntarily entered his guilty plea. The process for accepting a guilty plea is governed by court rule. MCR 6.302. Before accepting a guilty plea, the trial court must make sure that the defendant understands the trial rights the defendant is waiving, including the rights to a jury trial, the presumption of innocence, the requirement that guilt be proven beyond a reasonable doubt, and to call one's own witnesses and confront the prosecution's witnesses. MCR 6.302(B)(3)(a)-(i). At defendant's plea hearing, the trial court asked defendant if he understood he was giving up each of the rights the court is required to inquire about under the court rule, and defendant responded that he understood he was waiving those rights. To establish the voluntariness of a guilty plea, the trial court is required to ask the defendant whether he was promised anything beyond what is in the plea agreement, whether anyone has threatened him, and whether it is the defendant's own choice to plead guilty. MCR 6.302(C)(4)(a)-(c). The trial court asked defendant each of these questions, and defendant responded that no one had promised him anything beyond the plea agreement, no one had threatened him, and it was his own choice to plead guilty. Defendant also said that he was satisfied with his representation.

Defendant also argues that his trial counsel coerced him into accepting the prosecution's plea agreement offer by threatening defendant that he would receive a sentence of life imprisonment if defendant were found guilty at trial. Defendant's attorney accurately advised defendant of his sentencing exposure. A defendant convicted of CSC-I may be sentenced to imprisonment for life. MCL 750.520b(2)(a). Because defendant never showed hesitation or equivocation when entering his guilty plea, he stated he was satisfied with his representation on the record, and the record does not show defendant was given inaccurate advice, defendant's argument that he entered his guilty plea unknowingly or involuntarily lacks merit.

While defendant's ineffective assistance of counsel claim fails because he cannot show his counsel's conduct fell below an objective standard of reasonableness, defendant also cannot show prejudice. There is no indication from the record that the outcome of the plea process would have been different absent defense counsel error. The only potential error defendant has raised is that his trial counsel did not inform him of the requirement that he register pursuant to SORA for life, and defendant asserts on appeal that this issue is now moot because the court removed the SORA registration requirement from his sentence. The record shows that defendant accepted the prosecution's plea agreement offer after protracted consideration. On May 5, 2017, at a pretrial conference before defendant's original trial date, the prosecution stated that it had offered defendant a plea agreement with a sentence of 13 to 30 years' imprisonment and a requirement that defendant register under SORA for life. In December 2017, the parties were in the process of discussing a plea agreement under those same terms. At a December 18, 2017 hearing, the prosecution again offered a plea agreement of 13 to 30 years' imprisonment, and defendant asked the trial court for, and was granted, two additional weeks to consider the prosecution's offer. On January 2, 2018, defendant accepted that offer after it was stated on the record that defendant was agreeing to lifetime SORA registration and pled guilty to CSC-I. The record demonstrates that defendant accepted a plea agreement that had remained unchanged for months, and defendant accepted the offer nearly two months before his trial was scheduled to begin. Under these circumstances, defendant has not met his burden of showing that there would have been a different outcome in his plea taking process absent an error of counsel.

In sum, defendant received effective assistance of counsel and is not entitled to a *Ginther* hearing on remand. The trial court did not err when it denied defendant's motion to withdraw his guilty plea because defendant entered his guilty plea knowingly, voluntarily, and understandingly.

## IV. DOCKET NO. 361858

The prosecution argues that the trial court erred when it granted defendant's motion for an amended judgment of sentence to remove the requirement that defendant register pursuant to SORA for life. We disagree.

When SORA was first enacted,[8] it required criminal defendants convicted after October 1, 1995, of specified sex offenses to register their addresses with law enforcement and to have the information kept in a confidential database accessible only to law enforcement. *Betts*, 507 Mich at 533. SORA was amended numerous times, and the early amendments included changes such as making the database public and requiring registrants to provide updated photographs to be kept in the database. *Id.* at 535. Beginning in 2006, registrants were prohibited from living, working, or "loitering" within 1,000 feet of a school, a provision referred to as "exclusion zones." *Id.* In 2011, the Legislature made substantial changes to SORA, which included the creation of a three-tiered classification that labeled registrants on the basis of the severity of their offenses and a requirement for registrants to report a wide swath of information including all e-mail addresses and social media accounts. *Id.* at 555. Although SORA's requirements on convicted defendants were substantial, this Court had determined that SORA was a civil remedy to protect public health

---

[8] 1994 PA 295.

and safety, and that its requirements did not constitute a criminal punishment. *People v Bosca*, 310 Mich App 1, 60; 871 NW2d 307 (2015), rev'd in part 509 Mich 851 (2022).

In *Betts*, the Supreme Court considered whether SORA was a civil remedy or whether it imposed a criminal punishment on registrants for the purposes of the Michigan and United States Constitutions' prohibition on ex post facto laws. The *Betts* Court concluded that the requirement to register and comply with the 2011 version of SORA constituted a criminal punishment. *Betts*, 507 Mich at 562. In that case, the defendant was convicted of second-degree criminal sexual conduct in 1993 and was required to register pursuant under SORA. *Id*. at 536. In 2012, the defendant failed to report a change of residence, his e-mail address, and the purchase of a vehicle within three days, and the defendant was convicted of violations of the 2011 SORA amendments. *Id*. at 536-537. After this Court denied the defendant's application for leave to appeal his SORA violation conviction, the Supreme Court granted the defendant's application for leave to appeal and ordered the parties to address whether the requirements of SORA constituted a criminal punishment and whether enforcing the 2011 SORA amendments against registrants whose crimes were committed before the passage of those amendments implicated the Michigan and United States Constitution's prohibition against ex post facto laws. *Id*. at 538.

"A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a [committed] crime; or (4) allows the prosecution to convict on less evidence." *Betts*, 507 Mich at 542 (quotation marks omitted). The Court concluded that the 2011 amendments to SORA potentially increased the punishment for the conviction of a crime committed before the amendments so analysis of whether the amendments were an ex post facto law was necessary. *Id*. Determining whether a law is ex post facto requires the application of a two-step process, which begins with determining whether the legislature intended the statute to be criminal penalty or civil remedy. *Id*. If the legislature intended the statute to impose a criminal penalty, the inquiry ends. *Id*. at 542-643. If, however, a court determines that the legislature intended the statute to be a civil remedy, which the Court did in *Betts*, then it must apply the *Mendoza-Martinez*[9] factors to determine whether the statute imposes an ex post facto penalty. *Id*. at 543. The *Mendoza-Martinez* factors are:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned. [*Kennedy v Mendoza-Martinez*, 372 US 144, 168-189; 83 S Ct 554; 9 L Ed 2d 644 (1963).]

---

[9] *Kennedy v Mendoza-Martinez*, 372 US 144, 168-189; 83 S Ct 554; 9 L Ed 2d 644 (1963).

The Supreme Court determined that the 2011 version of SORA imposed a disability or restraint, its requirements have historically been regarded as punishment, it promotes the traditional aims of punishment, and its requirements were excessive but that it is rationally connected to a nonpunitive purpose. *Betts*, 507 Mich at 549-562. The Court weighed the factors and concluded that the 2011 version of SORA imposed a criminal punishment and enforcing it against someone who committed his or her crime before the 2011 amendments took effect violates the Michigan and United States Constitutions' prohibitions against ex post facto laws. *Id*. at 562. The Court further concluded that, despite Michigan's preference for severing unconstitutional provisions from a statute and leaving the rest of the statute in effect, MCL 8.5, the unconstitutional provisions of SORA could not be severed. *Id*. The Court reasoned that SORA's complicated legislative history would make it impossible to glean legislative intent regarding how particular provisions related to the whole statutory scheme and that severing individual provisions would require the Court to make legislative choices. *Id*. at 562-573. Therefore, the Court held that it was unconstitutional to apply the 2011 SORA amendments to someone whose crime was committed before the 2011 amendments took effect, but the *Betts* Court left intact the 2011 amendments for those who committed crimes after the amendments' enactment. *Id*. at 574.

Following oral arguments in *Betts*, but before the Court's opinion was issued, the Legislature passed 2020 PA 295 to amend SORA, effective March 24, 2021. *Betts*, 507 Mich at 538. The Supreme Court issued its opinion in *Betts* on July 27, 2021, and the Court did not consider whether the enforcement of any post-2011 amendments to SORA, including 2020 PA 295, against a defendant who committed his or her crime before 2011 ran afoul of the constitutional prohibition against ex post facto laws. *Id*. at 574 n 30. According to the Michigan House of Representatives legislative analysis, one of the purposes of 2020 PA 295 was to remove several provisions contained in the 2006 and 2011 amendments to SORA, most notably the exclusion zones, which the United States Court of Appeals for the Sixth Circuit opined may be unconstitutional in *Does #1-5 v Snyder*, 834 F3d 696, 705-706 (2016).[10] House Legislative Analysis, HB 5679 (December 1, 2020).

The prosecution argues that defendant is still required to register under the 2021 version of SORA because the amendments cured the constitutional defects of the 2011 version of SORA and the statute is once again a civil regulatory statute rather than a criminal punishment. This Court held that the current version of SORA continues to impose a criminal penalty, however, in *People v Lymon*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 18, lv gtd in part ___ Mich ___; 983 NW2d 82 (2023).[11]

---

[10] In *Does #1-5*, the court held that enforcement of the 2006 and 2011 amendments to SORA violated the United States Constitution's prohibition on ex post facto laws, and the court did not reach the question whether individual provisions of SORA were unconstitutional. *Does #1-5*, 834 F3d at 705-706.

[11] The defendant in *Lyman* was the appellant in this Court. The defendant filed an application for leave to appeal this Court's decision in the Michigan Supreme Court, and the prosecution filed a cross-application for leave to appeal. The Supreme Court denied the defendant's application for

-10-

In *Lymon*, ___ Mich App at ___; slip op at 1-2, the defendant was convicted of three counts of unlawful imprisonment, MCL 750.349b, after confining his wife and two minor children at gunpoint in 2014. Under SORA, a defendant who is convicted of unlawfully imprisoning a minor must register pursuant to SORA. *Id.* at ___; slip op at 1. The defendant argued that requiring him to register pursuant to SORA for a non-sex offense violates the Michigan Constitution's prohibition against cruel or unusual punishment and the United States Constitution's prohibition against cruel and unusual punishment. *Id.* at ___; slip op at 6. Before it could reach the issue whether the punishment was unconstitutional, this Court had to first consider whether SORA registration is still a criminal punishment, or if the 2021 SORA amendments rendered SORA a civil regulation. *Id.* at ___; slip op at 11. This Court relied almost entirely on the Supreme Court's analysis of the *Mendoza-Martinez* factors because the post-2011 SORA amendments made very few changes relevant to weighing the factors. *Id.* at ___; slip op at 11-18. The only notable changes that would factor against determining that SORA imposes a criminal punishment were the removal of the exclusion zones and modifications to some reporting requirements. *Id.* at ___; slip op at 12-15. This Court concluded that the version of SORA in effect after the 2021 amendments still imposes a punishment on those required to register under it. *Id.* at ___; slip op at 18.

In this case, the trial court properly granted defendant's motion to be relieved of the obligation to register pursuant to SORA for life. The prosecution's main argument is that, following the 2021 amendment to SORA, the statute is once again a civil regulatory statute rather than a criminal punishment, so the Supreme Court's decision in *Betts*, 507 Mich at 574 does not apply to defendant. This Court expressly rejected the argument that the 2021 version of SORA is not a criminal punishment. *Lyman*, ___ Mich App at ___; slip op at 18. And, notably, the Supreme Court entered orders directing trial courts to grant relief from judgment to remove SORA registration requirements for defendants convicted of sex offenses before the 2011 amendments after it decided *Betts* and with knowledge of the 2021 SORA amendments. See, e.g., *People v Werner*, ___ Mich ___; 969 NW2d 330 (2022); *People v Smith*, ___ Mich ___; 969 NW2d 15 (2022). The only other argument that the prosecution has made, briefly and without citation to authority, is that defendant's obligation to register pursuant to SORA arises from the current 2021 version of SORA and not a previous one. The current version of MCL 28.723 still imposes a requirement under SORA that individuals who were convicted of an enumerated offense after October 1, 1995, must register, and defendant was convicted of CSC-I after that date. Following *Betts*, 507 Mich at 574, and *Lyman*, ___ Mich App at ___; slip op at 18, however, that requirement is essentially a nullity because the state lacks the ability to enforce that requirement on someone convicted before the 2011 SORA amendments took effect. Therefore, the trial court did not abuse

_____

leave to appeal and granted the prosecution's cross-application for leave to appeal. *People v Lymon*, ___ Mich ___; 983 NW2d 82 (2023). The Supreme Court's order granting leave to appeal confines the issue presented to the single question whether requiring a defendant to register pursuant to SORA, when the defendant was convicted of a nonsexual crime, violates the Michigan Constitution's prohibition against cruel or unusual punishment and the United States Constitution's prohibition against cruel and unusual punishment. *Id.*

its discretion when it granted defendant's motion for an amended judgment of sentence to remove the requirement that defendant register pursuant to SORA for life.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney